The People *ex rel.* Springfield, Effingham and Southeastern Railroad Company, for use, etc.

*v.*

The Town of Bishop *et al.*

*Filed at Mt. Vernon September 27, 1884.*

1. Municipal aid to railroads—*whether a vote thereon was prior to the adoption of the separate prohibitory article.* The separate article of the constitution of 1870, prohibiting municipal aid to railroads or private corporations, took effect from and after its adoption by the people on July 2, 1870, which was at the moment the polls were closed and the voting ceased.

2. Where a township election was duly called, in pursuance of a statute, in June, 1870, upon the question of a donation of $10,000 in aid of a railway company, to be paid in bonds when the railroad should be completed to a certain place, and the election was set for and held on July 2, 1870, the same day the constitution and the separate article prohibiting municipal aid to railroads or private corporations were submitted to the people, the election officers using, however, a separate ballot box, and both polls were closed at the same time, about sun set, it was *held,* that it could not be said the vote for the donation was had prior to the adoption of the article of the constitution prohibiting such donations.

3. In determining whether the election in respect to the proposed municipal aid to the railroad, held under such circumstances, was or was not prior in point of time to the adoption of the separate article prohibiting such aid, the court declined to enter upon the inquiry as to the difference in time between sun set at the particular locality where the municipal election was held, and sun set at other voting places in the State west of that locality, holding that the term "sun set," as used in the schedule to the constitution, requiring the polls to be kept open on the day of the election in respect to the adoption or rejection of that instrument and the separate article, until that time, was not used in the precise, mathematical sense, but rather in a more practical sense, requiring only a reasonable approximation to that time.

4. Municipal bonds—*in aid of railroads—burden of proof.* The burden of proof rests upon parties claiming the right to issue municipal bonds in aid of railroads or other private corporations, or to compel the issuing of such bonds, or asserting the validity of such bonds issued for such purposes since the adoption of the present constitution, to show affirmatively that they were authorized by a vote of the municipality, under then existing laws, prior to the adoption of the constitution.

APPEAL from the Circuit Court of Effingham county; the Hon. THOMAS S. CASEY, Judge, presiding.

Mr. LYMAN TRUMBULL, and Mr. JOHN S. COOPER, for the appellant:

Municipal corporations are subject to the will of the legislature, and can obtain no vested rights by virtue of a statute prohibiting or limiting them as to the doing of an act, which may not be subsequently taken away by a repeal or amendment of such statute. *Coles* v. *Madison County*, Beecher's Breese, 160; *County Comrs.* v. *People*, 11 Ill. 202; *Harris* v. *Board of Supervisors*, 105 id. 445; *Richland County* v. *Lawrence County*, 12 id. 1; *Trustees of Schools* v. *Tatman*, 13 id. 27; *Gutzweller* v. *People*, 14 id. 142; *Holliday* v. *People*, 5 Gilm. 214; *Shaw* v. *Dennis*, id. 405; *Johnson* v. *Stark County*, 24 Ill. 75; *State* v. *Railroad Co.* 12 G. & J. 399; *Town of Guilford* v. *Supervisors*, 13 N. Y. 143; *People* v. *Mayor*, 4 Comst. 419; *Darlington* v. *New York*, 31 N. Y. 164; *Brewster* v. *Syracuse*, 19 id. 116; *Sedgwick County* v. *Bunker*, 16 Kan. 498; *People* v. *Plank Road Co.* 27 Barb. 445.

As to the effect of the repeal of the Limitation act of 1877, see *Hewett* v. *Wilcox*, 1 Metc. 154; *Central Bank* v. *Empire Stone Dressing Co.* 26 Barb. 23; *Washburn* v. *Franklin*, 35 id. 599; *Key* v. *Goodwin*, 4 M. & P. 341; *Butler* v. *Palmer*, 1 Hill, 334; *United States Mortgage Co.* v. *Gross*, 93 Ill. 483; *Hyman* v. *Bayne*, 83 id. 256; *Welch* v. *Wadsworth*, 30 Conn. 149; *Hepburn* v. *Curts*, 7 Watts, 300; *Schenley* v. *Commonwealth*, 36 Pa. 29; *Grimm* v. *Weisenberg School District*, 57 Pa. St. 433; *People* v. *Seymour*, 16 Cal. 332.

Did the separate article of the new constitution, prohibiting municipal aid to railroads, adopted July 2, 1870, take effect prior to the donation being voted to this railroad on the same day? On this point the following citations are made: *Schall* v. *Bowman*, 62 Ill. 322; *Louisville* v. *Savings Bank*, 104 U. S. 469.

Mr. S. F. Gilmore, and Mr. R. C. Harrah, for the appellees :

The writ was properly denied, because of the bar of the statute of May 29, 1877. *People* v. *Town of Granville*, 104 Ill. 285.

The action having been barred by the act of May 29, 1877, in force at the time the liability of the township ceased, the right of defence which the statute furnished was a vested right, of which the township could not be deprived by subsequent legislation. Cooley's Stat. Lim. chap. 11, secs. 365–369; Wade on Retroactive Laws, sec. 197; *Sprecher* v. *Wakeley*, 11 Wis. 442; *State* v. *Lincoln*, 17 id. 578; *Davis* v. *Minor et ux.* 1 How. 183; *Bragg's Appeal*, 43 Pa. St. 43; *Gardner* v. *Stephens*, 1 Heisk. 280; *Yancy* v. *Yancy*, 5 id. 353; *Rockport* v. *Walden*, 54 N. H. 167; *Moore* v. *State*, 43 N. J. L. 203.

The donation having been voted for on the 2d day of July, 1870, simultaneously with the vote of the people in adopting the present constitution, was not prior to the adoption of the article prohibiting such municipalities from making donations to such corporations, and conferred no power upon the municipality to issue, and no right upon the petitioner to receive, the bonds. This article of the constitution went into effect and became operative on the 2d day of July, 1870, and all subscriptions or donations not authorized by a vote of the municipality prior to that time are void. *Schall* v. *Bowman*, 62 Ill. 325; *Jackson County* v. *Brush*, 77 id. 59; *Middleport* v. *Ætna Life Ins. Co.* 82 id. 562; *Wright* v. *Bishop*, 88 id. 302; *Wade* v. *Walnut*, 105 U. S. 1.

Mr. John C. White, and Mr. B. F. Kagay, also, for the appellees :

*Mandamus* will not be awarded unless the petitioner shows a clear legal right to have the thing sought by it done in the manner and by the persons sought to be coerced. *People* v. *Glann*, 70 Ill. 232; *People* v. *Lieb*, 85 id. 484; *People* v.

*Klokke,* 92 id. 134; *People* v. *Village of Crotty,* 93 id. 180; *Lavalle* v. *Soucy,* 96 id. 467.

The burden was on the petitioner to show affirmatively that the bonds were authorized by a vote pursuant to law, prior to the adoption of the present constitution.     *Wright* v. *Bishop,* 88 Ill. 303; *Middleport* v. *Ætna Life Ins. Co.* 82 id. 568; *People* v. *Jackson County,* 92 id. 453.

The power in the town to make the donation never came into existence.     1 Dillon on Mun. Corp. sec. 443; Private Laws 1869, vol. 3, p. 198.

Before the condition of the vote was performed, and before any interest in the proposed donation was vested in the railroad company, the alleged inchoate power of the town to make the donation was extinguished.     Cooley's Const. Lim. 440; *Merrill* v. *Sherburne,* 1 N. H. 214; *Town of Concord* v. *Savings Bank,* 92 U. S. 630.

The legislature could not, by the act of June 22, 1883, take away from the town a defence then perfect, and vested in the town by the operation of the Statute of Limitations. *Moore* v. *State,* 43 N. J. 204; Cooley's Const. Lim. (5th ed.) 440, 445, 449, note 5; *Naught* v. *O'Neal,* Breese, 36; *Hinchman* v. *Whetstone,* 23 Ill. 189; *Paullin* v. *Hall,* 40 id. 277; *Chiles* v. *Davis,* 58 id. 416; *Kallenbach* v. *Dickinson,* 100 id. 435.

The act of June 22, 1883, will not be construed to be retroactive, and intended to take away from the town the defence already vested under the act of 1877.     If it had this intention and effect, its operation would be unconstitutional, because it imposed a debt for local purposes not consented to by the town, to be paid by taxation.     *People* v. *Chicago,* 51 Ill. 31; *Harvard* v. *St. Clair Drainage Co.* id. 132; *Dunnovan* v. *Green,* 57 id. 69; *Marshall* v. *Silliman,* 61 id. 224; *Railroad Co.* v. *Sparta,* 77 id. 509; Cooley's Const. Lim. (5th ed.) 285, 273, note 4; Const. 1870, art. 9, secs. 9, 10.

Mr. Justice Scott delivered the opinion of the Court:

On the 10th of March, 1869, an act of the General Assembly of the State of Illinois, entitled "An act to incorporate the Springfield, Effingham and Southeastern Railroad Company," was approved and went into force and effect. In and by that act it was provided, among other things, that counties, townships, cities or incorporated towns, on or near the line of such railroad, might make subscriptions or donations to the capital stock of such company, if they chose to do so, in the manner provided in the act. The substance of the several sections in relation to subscriptions and donations is set forth in the petition so fully, that it appears what authority municipalities had to make either subscriptions or donations to the capital stock of the corporation, and what formalities should be observed in making the same. It is also set forth in the petition that after the act of March 10, 1869, went into force, and prior to the 2d of July, 1870, the railroad company, in accordance with the act of incorporation, had located its road through the counties of Jasper and Effingham, and through the town of Bishop, and that on the 2d of June, 1870, there was presented to the supervisors of the town of Bishop a petition, signed by twenty-five legal voters of the town, praying that an election be held in the township on the 2d day of July, 1870, to decide whether the township, under the provisions of the act of incorporation, would make a donation of its bonds to the company in the sum of $10,000, payable in twenty years, with ten per cent interest per annum, payable annually, on the 2d of June in each year, which sum it was proposed to donate to the railroad company, and deliver to such company its bonds for such amount when its road should be built, and the cars running thereon, from the city of Effingham to the east line of Effingham county. It is also alleged the petition was in due form under the act and in conformity therewith, and that the

acting supervisor of the town gave thirty days' notice of the
time of holding such election, in conformity with the prayer
of said petition, and named the 2d day of July, 1870, as the
time of holding such election, and that the election would be
held at the place provided for holding general elections in the
township, and that on the 2d day of July, 1870, the election
was held at the place and time specified in the notice, and
that the same resulted as follows: for donation, forty-four
votes; against donation, twenty-two votes.    It is also alleged
that under some judicial proceeding the claim or right of the
railroad company to the donation alleged to have been voted
by the township, was directed to be sold by the receiver before
that time appointed by the court, to raise funds to aid in com-
pleting the road, and at the sale thereof Alfred P. Wright,
for whose use the suit is brought, became the purchaser; and
that in the month of August, 1883, the railroad having been
built, and the cars running thereon, from the city of Effing-
ham to Newton, in Jasper county, and beyond, and over the
entire road, Alfred P. Wright, for himself, and in the name
of the railroad company, being authorized so to do, caused
a legal demand to be made on the supervisor and town
clerk of the town of Bishop to have issued and delivered to
the railroad company, or to Wright, the $10,000 in bonds
of the town, with coupons attached, in accordance with the
alleged vote.    The supervisor and clerk of the town declined
to issue the bonds, and the prayer of the petition is for a
writ of *mandamus* to compel them to do so.    The petition
contains other matters, but it is not thought to be necessary
to an understanding of the questions discussed to state them.
The defendants made a general denial of the allegations of
the petition, and a stipulation was signed by the respective
counsel, by which it was agreed that all questions as to the
form of the pleadings should be waived, and that petitioner, on
the trial, might introduce any competent evidence to support
the allegations of the petition, to make out a case, and that

9—111 ILL.

respondent might introduce any competent evidence under the general denial, and make all defences thereunder as if the same were specially pleaded. The cause was submitted to the court, on the pleadings and the evidence, and the court found the issues for defendants, and dismissed the petition. The relator brings the case to this court on appeal.

A number of defences are insisted upon, but as there is one—if it is well taken—that is fatal to the relief sought, the discussion of all other questions is rendered unnecessary. It is, that the bonds claimed were not voted by the electors of the town sought to be coerced, prior to the adoption of that section of the constitution of the State entitled "Municipal subscriptions to railroads or private corporations," which took effect July 2, 1870, and which forbids any county, city or township, or other municipal corporation, thereafter to become a subscriber to the capital stock of any railroad or private corporation, or to make donations to or loan its credit in aid of any such corporation.

It is conceded this separate article of the constitution of 1870 took effect from and after its adoption, and that it was adopted on the 2d day of July, 1870, that being the day on which it, with the body of the constitution, was submitted to the people for adoption or rejection. But a question arising on the record, and which is presented for decision, is, whether an election which took place on the same day with the voting on the new constitution was annulled by that fact. This exact question has not before arisen in this court, although cases have been determined, which, if followed to their logical results, must have an important bearing on the question to be decided. Previous decisions of this court have settled definitely that the separate article of the constitution in relation to subscriptions and donations to the capital stock of railroads or other private corporations, took effect from and after its adoption, and that it was adopted on the 2d day of July, 1870, the day on which it, with the body of the consti-

tution, was submitted to the people for adoption or rejection. *Schall* v. *Bowman,* 62 Ill. 325; *Wright* v. *Bishop,* 88 id. 302; *Richards* v. *Donagho,* 66 id. 73. It is also settled by the previous decisions of this court, in accordance with the plain meaning of the constitution, that there is now no authority, since the adoption of the present constitution, in counties, cities, towns or other municipalities, to make subscriptions to the capital stock of railroad companies, or to make donation to or lend their credit in aid of such corporations, and that the burden rests upon the party claiming the right to issue them, or to compel the issuing of such bonds, or asserting the validity of such bonds issued for such purposes since the adoption of the present constitution, to show affirmatively that they were authorized by a vote of the municipality, under existing laws, prior to the adoption of the constitution. *Jackson County* v. *Brush,* 77 Ill. 59; *Middleport* v. *Ætna Life Ins. Co.* 82 id. 562; *Wright* v. *Bishop, supra.* In *Wright* v. *Bishop,* it was held the clause of the constitution containing the prohibition against municipal subscription or donation in the aid of railroad companies and other private corporations, took effect on the 2d of July, 1870, and that all such subscriptions or donations not authorized by a vote of the municipality *prior* to that time, are void. Conceding, as may be done, the words "prior to that time," as used in the opinion of the court, simply mean prior to the adoption of the separate article of the constitution, whenever that was, the inquiry arises, was the donation in this case voted by the municipality, under existing law, prior to the adoption of this article of the constitution on the 2d day of July, 1870? The burden of proving that fact, as has been seen, rests on the relator, and unless it has been shown affirmatively, the relief sought must be denied.

It becomes important, then, to inquire, when was this article of the constitution adopted, and from what time shall it be regarded as being in force? Counsel suggest, and with

that view this court is inclined to concur, it seems clear this article was not and could not be adopted until after the polls closed at sun down on the day of the election. This view finds support in the decision of this court in *Crook* v. *The People*, 106 Ill. 237, where it was held the majority vote of the people "For city organization," was the adoption of the general law, and was a perfected act when the vote closed on that day, and that the city officers voted for under the old charter at the same election never became city officers. Nothing remained to be done, and the old charter was in fact repealed when the voting ceased on that day, and the persons voted for on the same day the general law was adopted, for city officers, could not thereafter be qualified under a charter that had ceased to exist. In *Louisville* v. *Savings Bank*, 104 U. S. 469, it was held, on authority of the adjudged cases on that subject, that courts, when substantial justice required it to be done, might ascertain the precise hour when a statute took effect, by the approval of the executive; and so, in ascertaining when a constitutional provision was adopted, no reason was perceived why the court might not, in proper cases, inquire as to the hour when such approval became effective, as to the time when, by the closing of the polls, the people had adopted such provision. Adopting this view of the law, it may be held this separate article of the constitution took effect at the close of the polls on the day of the election. It was the will of the people, as expressed by their vote throughout the State, which had the effect to adopt it, and it was an accomplished fact when all the votes had been cast. This is the most favorable view for the relator, counsel can with any show of reason insist upon, and even under this construction it is not thought the donation in this case is saved. On the undisputed facts of this case, can it be said the donation was voted, under existing laws, prior to the adoption of the separate article of the constitution, regarding that as having taken place at the closing of the polls on the day of the election?

Certainly not. The same construction must be applied to the donation as to the article of the constitution—that is, that it was not voted until the votes were all cast. Which had priority then?—the adoption of the constitution, or the vote for the donation? It is certainly not enough they were acts occurring at the precise same time. The donation must have been voted prior to the adoption of the constitution, to be valid. When two acts are done at the precise same instant of time, it can not be said one occurred prior to the other. It does not appear from anything in this record the donation was, in fact or in law, voted prior to the adoption of the constitution. In order to entitle relator to relief, it was necessary he should show affirmatively it was so done.

It will be noticed the election whether the town would make the donation, was fixed to take place on the same day of the election for the adoption or the rejection of the constitution by the people of the State. It was held on that day. The same judges and the same clerks conducted both elections, although two ballot boxes were used and separate poll books and tally lists were kept. Both elections were opened at the exact same time, and both were closed at the same time, by one proclamation. The charter of the railroad company, under which the election to vote the donation was held, required the election should be conducted in the same manner and at the same places provided for holding elections in such township. The schedule to the new constitution required the election to be conducted and return thereof made according to the laws then in force regulating general elections, except no registry of voters could be required, and the polls should be kept open for the reception of ballots until sun set of the day of the election. The laws regulating general elections then in force, required the polls to be opened at eight o'clock in the forenoon, and provided they should be closed at six o'clock P. M., unless the judges should decide to keep the polls open to a later hour, which they might do not longer

than midnight.  The testimony of one of the clerks of the election is, the polls were kept open until about sun down, and that both elections were closed at the same time, by one proclamation.  It is evident the election for donation was not closed at six o'clock.  The polls were kept open, as the judges had the right to do under the law, and were not in fact closed until about sun down, when the polls for the election on the adoption of the constitution were closed.  Whether any votes were cast after six o'clock in the afternoon does not appear. The witness does not recollect how that was.  The voting was partly done in the forenoon and partly in the afternoon. The last voter whose name appears on the poll book was H. Coleman, or Colemyer, and the testimony is he voted at each election.  That is evidence tending also to show both elections were kept open for the same time and were closed at the same hour.  Of this fact there can scarcely be a doubt, and the hour at which the polls were closed was about sun down.

Assuming, then, as must be done, the polls for the donation were not closed at six o'clock, but at sun down, what warrant is there for saying the vote on the donation was taken before the separate article of the constitution was adopted?  Certainly none.  But the argument of counsel for the relator goes further, and as it is understood, assumes that as the schedule to the constitution required the polls to be kept open for the reception of ballots on the question of the adoption of the constitution, until sun set of the day of the election, it will be presumed it was observed everywhere in the State; and even admitting the polls were not closed in the town of Bishop until sun down, as there were voting places farther west in the State than in the town of Bishop, the polls must have been closed some minutes earlier at the latter place, so that the donation was in fact voted under existing laws before the voting had ceased at the westernmost voting places. Whether that is so, is uncertain; and if a fact, it is scarcely

susceptible of being made certain by any proof attainable. It is certain no proof was offered, and the presumption it is insisted should be indulged in support of that view, is overcome by considerations entitled to great weight: First, there is no law that required the polls should be closed precisely at sun set. It was only required the polls should be kept open until that time. *Non constat*, the polls were kept open in the town of Bishop as late as at any other point in the State. Of course, the record contains nothing on that subject. Second, "sun set," although a definite period of time at any given locality, yet what that time is can only be known from scientific calculations, which very few persons are capable of making. It is not precisely the same on any two days in succession, nor is it exactly the same at any two points distant apart in the State on the same day. It is known the sun sets later at a point west than one further east, and of this fact the court may take judicial notice. The exact difference of time, however, can only be ascertained by a mathematical calculation. Certainly the framers of the schedule to the constitution never expected the judges of election at the several voting places in the entire State would ascertain with mathematical precision the hour of "sun set," that they might close the polls at that precise instant. It is believed the term "sun set" was not used by the framers of that instrument in any accurate sense, to be determined by calculation. Evidently all that was meant was that the polls should be kept open until it should appear to be "sun set," as that fact might be ascertained by the judges from observation, or from the best information attainable. Nor was it expected the judges at the several voting places throughout the State would observe the hour of "sun set" with exact accuracy. The hour of "sun set" on any given day, as it might appear to different persons, could hardly be expected to be accurately observed. Their judgment might vary many minutes. One person might conclude the sun had set, and another might

not think so.   It would be a mere matter of judgment, and uncertain at that, aided by the most accurate information ordinarily possessed.   At most, the actual difference in time of "sun set" at the voting place in the town of Bishop and at the westernmost place in the State would be but a few minutes, and is so slight as to be almost, if not entirely, inappreciable by common observation.   It might be that the judges at the latter place would conclude it was "sun set," and close the polls before the judges at the former place would conclude the hour for closing the polls had arrived, or before they deemed it necessary to close the polls.

Conceding, then, that the·polls were closed in the town of Bishop at what the judges *thought* was "sun set," there is no warrant for the proposition that was in fact earlier than the polls were closed at the westernmost voting place in the State, or elsewhere in the State.   Whether the polls on the day of the election were, as a matter of fact, closed at an early or later time at one place than another point in the State, rests entirely on conjecture, and is too uncertain to base a judicial finding upon it.   There is nothing in the record that shows or tends to show the donation insisted upon was voted prior to the adoption of the constitution, assuming, as it is thought may be done, it was adopted when the votes were all cast, on the day of the election.

It is suggested the decision of the Supreme Court of the United States in *Louisville* v. *Savings Bank,* 104 U. S. 469, ought to have great weight in the decision of this case.   Were the facts analogous, the authority of the case would be freely acknowledged as being entitled to great consideration.   That case involved the legality of a vote taken on the 2d of July, 1870, to issue bonds for the payment of a donation that had been previously voted.   The town meeting to determine whether bonds should be issued in lieu of a special tax, was appointed to be held at nine o'clock in the forenoon of the 2d of July, 1870, and it was so held.   It was on that state

of facts the court said: "The presumption may be therefore fairly indulged that the township had in fact voted for issuing bonds before the close of the general election on the same day the people of the State voted on the adoption of the particular section of the constitution separately submitted, which relates to the municipal subscriptions to railroads and private corporations." But in the case being considered there can be no presumption indulged the electors of the town voted the donation before the close of the general election, for the evidence, to say the least of it, leaves that question in doubt, so that it can not be fairly said it affirmatively appears the donation was voted before the adoption of the article of the constitution separately submitted, which prohibits all subscriptions or donations to railroads or other private corporations.

This view being conclusive of the whole case, it will not be necessary to consider the constitutionality of the act of June 22, 1883, which declares, "the liability of all counties, cities, townships, towns or precincts which have voted aid or donations to or subscriptions to the capital stock of any railroad company, in conformity to the laws of this State, for the building or in aid of the building of any railroad to, into, through or near such county, city, township, town or precinct, to issue such voted aid, shall cease and determine upon and after the 1st day of September, A. D. 1883, and no bonds shall be issued or stock subscribed to any such railroad company after that date, upon account of or upon the authority of such vote," which would otherwise be directly involved in the decision to be made, nor will it be necessary to discuss any other question raised on the record.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*