WILLIAM G. BARRETT et al., Respondents, *v.* THE STATE OF NEW YORK, Appellant.

Forest, Fish and Game Law — protection of beaver — statutory provision that no person shall molest or disturb wild beaver or their dams, houses or habitations — state acting as trustee for people in preserving wild animals not liable for damages caused by protected animals.

1. The forest, fish and game commission, under authority conferred upon it by the state, purchased and liberated in the Adirondacks wild beaver. They or their descendants destroyed trees on the property of the plaintiffs. In an action to recover for the damage so caused, *held*, that the state was not liable either because it passed statutes protecting beaver and forbidding their molestation, or because, having the beaver in its possession, it freed them knowing that they were likely to cause injury to property.

2. Had the statutes referred to been held unconstitutional the state would not be liable, since a void statute is no protection to officers assuming to proceed under its authority, and no one need obey it.

3. It is not true that whenever an individual is liable for a certain act the state is liable for the same act. In liberating the beaver the state was acting as a government and as a trustee for the people, and as their representative it was doing what it thought best for the interests of the public at large. Hence, the rule that one who keeps wild animals in captivity must see to it at his peril that they do no damage to others is not applicable.

*Barrett* v. *State*, 173 App. Div. 986, reversed.

(Argued March 26, 1917; decided April 17, 1917.)

APPEAL from a judgment of the Appellate Division of the Supreme Court for the third judicial department, entered May 18, 1916, affirming a determination of the Board of Claims in favor of the plaintiffs.

The nature of the claims and the facts, so far as material, are stated in the opinion.

*Egburt E. Woodbury, Attorney-General* (*Edmund H. Lewis* of counsel), for the appellant. The statutes enacted for the protection and preservation of beaver were within the proper exercise of police power. (*Geer* v. *Connecticut,* 161 U. S. 519; *People* .v. *Bootman,* 180 N. Y. 1; *Phelps* v. *Racey,* 60 N. Y. 10; *People ex rel. Hill* v. *Hesterberg,* 180 N. Y. 126; 211 U. S. 31; *Lawton* v. *Steel,* 119 N. Y. 226; 152 U. S. 133; *People* v. *Griswold,* 213 N. Y. 92; *People* v. *Klinck Packing Co.,* 214 N. Y. 121; *People ex rel. Knoblauch* v. *Warden, etc.,* 216 N. Y. 154.) The protection of beaver being a valid exercise of police power, the injury for which claimants seek relief herein is *damnum absque injuria.* (*Phelps* v. *Racey,* 60 N. Y. 10; *Atwater* v. *Trustees, etc.,* 124 N. Y. 602; *Uppington* v. *City of New York,* 165 N. Y. 222; *Fries* v. *N. Y. & Harlem R. R. Co.,* 169 N. Y. 270; *Muhlker* v. *N. Y. & H. R. R. Co.,* 173 N. Y. 549; *Chase-Hibbard Milling Co.* v. *City of Elmira,* 207 N. Y. 460.) The damages suffered by claimants were avoidable consequences for which no recovery can be had herein. (*Milton* v. *Hudson River Steamboat Co.,* 37 N. Y. 214; *Beattie* v. *N. Y. & L. I. Const. Co.,* 196 N. Y. 346; *Rexter* v. *Starin,* 73 N. Y. 601; *Hogle* v. *N. Y. C. & H. R. R. R. Co.,* 28 Hun, 363.)

*Charles C. Fenno* and *Frederick T. Burns* for respondents. The state owned and was in actual physical possession of the beaver liberated on Eagle creek. The act of the state in liberating the beaver, knowing of their natural propensity to destroy trees, makes the state liable for the damages done to claimants' property by the beaver. (Cooley on Torts, 122, 707; *State* v. *House,* 65 N. C. 315; *Keshan* v. *Gates,* 2 Super. Ct. 288; *Worth* v. *Gilling,* L. R. [2 C. P.] 3; *Van Leuven* v. *Lyke,* 1 N. Y. 516; *Earl* v. *Van Alstine,* 8 Barb. 633; *Spring Co.* v. *Edgar,* 99 U. S. 645.) The legislature has the authority to make reasonable regulations as to the preservation of

game. It has not the right, however, under the guise of police power, to protect an animal such as the beaver, which is known to be destructive to property. This is an unreasonable exercise of the police power, and the acts protecting the beaver are unconstitutional. (*People* v. *Bootman,* 180 N. Y. 1; *Matter of Jacobs,* 98 N. Y. 98; *People* v. *Gilson,* 109 N. Y. 389; *Forster* v. *Scott,* 136 N. Y. 577; *Geer* v. *Connecticut,* 161 U. S. 519.) Claimants were prohibited from protecting their property by law. Such a law is an unreasonable exercise of the police powers and deprives claimants of their property without due process of law. (L. 1905. ch. 428, § 14; L. 1912, ch. 318, § 157.)

ANDREWS, J. At one time beaver were very numerous in this state. So important were they commercially that they were represented upon the seal of the New Netherlands and upon that of the colony as well as upon the seals of New Amsterdam and of New York.

Because of their value they were relentlessly killed, and by the year 1900 they were practically exterminated. But some fifteen animals were left, scattered through the southern portion of Franklin county.

In that year the legislature undertook to afford them complete protection, and there has been no open season for beaver since the enactment of chapter 20 of the Laws of 1900.

In 1904 it was further provided that "No person shall molest or disturb any wild beaver or the dams, houses, homes or abiding places of same." (Laws 1904, ch. 674, section 1.) This is still the law, although in 1912 the forest, fish and game commission was authorized to permit protected animals which had become destructive to public or private property to be taken and disposed of. (Laws 1912, ch. 318.)

By the act of 1904 $500 was appropriated for the purchase of wild beaver to restock the Adirondacks, and in

1906 $1,000 more was appropriated for the same purpose. The commission, after purchasing the animals, was authorized to liberate them.

Under this authority twenty-one beaver have been purchased and freed by the commission. Of these four were placed upon Eagle creek, an inlet of the Fourth Lake of the Fulton Chain. There they seem to have remained and increased.

Beaver are naturally destructive to certain kinds of forest trees. During the fall and winter they live upon the bark of the twigs and smaller branches of poplar, birch and alder. To obtain a supply they fell even trees of large size, cut the smaller branches into suitable lengths and pull or float them to their houses. All this it must be assumed was known by the legislature as early as 1900.

The claimants own a valuable tract of woodland upon Fourth Lake bounded in the rear by Eagle creek. The land was held by them for building sites and was suitable for that purpose. Much of its attractiveness depended upon the forest grown upon it. In this forest were a number of poplar trees. In 1912 and during two or three years prior thereto 198 of these poplars were felled by beaver. Others were girdled and destroyed. The Board of Claims has found, upon evidence that fairly justifies the inference, that this destruction was caused by the four beaver liberated on Eagle creek and their descendants, and that the claimants have been damaged in the sum of $1,900. An award was made to them for that sum and this award has been affirmed by the Appellate Division.

To sustain it the respondents rely upon three propositions. It is said, *first*, that the state may not protect such an animal as the beaver which is known to be destructive; *second*, that the provision of the law of 1904 with regard to the molestation of beaver prohibits the claimants from protecting their property and is, therefore, an unreasonable exercise of the police power; and, *third*,

that the state was in actual physical possession of the
beaver placed on Eagle creek and that its act in freeing
them, knowing their natural propensity to destroy trees,
makes the state liable for the damage done by them.

We cannot agree with either of these propositions.

As to the first, the general right of the government to
protect wild animals is too well established to be now
called in question. Their ownership is in the state in its
sovereign capacity, for the benefit of all the people. Their
preservation is a matter of public interest. They are a
species of natural wealth which without special protection
would be destroyed. Everywhere and at all times gov-
ernments have assumed the right to prescribe how and
when they may be taken or killed. As early as 1705 New
York passed such an act as to deer. (Colonial Laws, vol.
1, p. 585.) A series of statutes has followed protecting
more or less completely game, birds and fish.

"The protection and preservation of game has been
secured by law in all civilized countries, and may be jus-
tified on many grounds. * * * The measures best
adapted to this end are for the legislature to determine,
and courts cannot review its discretion. If the regula-
tions operate, in any respect, unjustly or oppressively, the
proper remedy must be applied by that body." (*Phelps*
v. *Racey*, 60 N. Y. 10, 14.)

Wherever protection is accorded harm may be done to
the individual. Deer or moose may browse on his crops;
mink or skunks kill his chickens; robins eat his cherries.
In certain cases the legislature may be mistaken in its
belief that more good than harm is occasioned. But this
is clearly a matter which is confided to its discretion. It
exercises a governmental function for the benefit of the
public at large and no one can complain of the incidental
injuries that may result.

It is sought to draw a distinction between such animals
and birds as have ordinarily received protection and
beaver on the ground that the latter are unusually

destructive and that to preserve them is an unreasonable exercise of the power of the state.

The state may exercise the police power " wherever the public interests demand it, and in this particular a large discretion is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests. To justify the state in thus interposing its authority in behalf of the public, it must appear, *first*, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, *second*, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals." (*Lawton* v. *Steele*, 152 U. S. 133, 136.)

The police power is not to be limited to guarding merely the physical or material interests of the citizen. His moral, intellectual and spiritual needs may also be considered. The eagle is preserved, not for its use but for its beauty.

The same thing may be said of the beaver. They are one of the most valuable of the fur-bearing animals of the state. They may be used for food. But apart from these considerations their habits and customs, their curious instincts and intelligence place them in a class by themselves. Observation of the animals at work or play is a source of never-failing interest and instruction. If they are to be preserved experience has taught us that protection is required. If they cause more damage than deer or moose, the degree of the mischief done by them is not so much greater or so different as to require the application of a special rule. If the preservation of the former does not unduly oppress individuals, neither does the latter.

In the determination of what is a reasonable exercise of the powers of the government, the acts of other governments under similar circumstances have some bearing.

In Wyoming, Utah, North Dakota, Wisconsin, Maine, Colorado and Vermont beaver are absolutely protected. In Michigan they are protected except between November 1st and May 15th of each year. In South Dakota except between November 15th and April 2d. In Quebec for a number of years there was no open season. Lately there has been an open season for a short time in the autumn.

We, therefore, reach the conclusion that in protecting beaver the legislature did not exceed its powers. Nor did it so do in prohibiting their molestation. It is possible that were the interpretation given by the respondents to this section right a different result might follow. If the claimants, finding beaver destroying their property, might not drive them away, then possibly their rights would be infringed. In *Aldrich* v. *Wright* (53 N. H. 398) it was said in an elaborate opinion, although this question we do not decide, that a farmer might shoot mink even in the closed season should he find them threatening his geese.

But such an interpretation is too rigid and narrow. The claimants might have fenced their land without violation of the statute. They might have driven the beaver away, were they injuring their property. The prohibition against disturbing dams or houses built on or adjoining watercourses is no greater or different exercise of power from that assumed by the legislature when it prohibits the destruction of the nests and eggs of wild birds even when the latter are found upon private property.

The object is to protect the beaver. That object as we decide is within the power of the state. The destruction of dams and houses will result in driving away the beaver. The prohibition of such acts, being an apt means to the end desired, is not so unreasonable as to be beyond the legislative power.

We hold, therefore, that the acts referred to are constitutional. But had we reached a different conclusion the respondents would not be aided. We know of no

principle of law under which the state becomes liable because of the adoption of an unconstitutional statute. Such a statute is no protection to officers assuming to proceed under its authority. The state itself, if it permits such a claim to be enforced against it, may become liable for what they do. But the statute itself is void. No one need obey it. If no affirmative act is done under its supposed authority neither the state nor its officers are liable, because the citizen chooses to obey where he need not have done so.

Somewhat different considerations apply to the act of the state in purchasing and liberating beaver.

The attempt to introduce life into a new evironment does not always result happily. The rabbit in Australia — the mongoose in the West Indies have become pests. The English sparrow is no longer welcome. Certain of our most troublesome weeds are foreign flowers.

Yet governments have made such experiments in the belief that the public good would be promoted. Sometimes they have been mistaken. Again the attempt has succeeded. The English pheasant is a valuable addition to our stock of birds. But whether a success or failure the attempt is well within governmental powers.

If this is so with regard to foreign life, still more is it true with regard to animals native to the state, still existing here, when the intent is to increase the stock upon what the Constitution declares shall remain forever wild forest lands. If the state may provide for the increase of beaver by prohibiting their destruction it is difficult to see why it may not attain the same result by removing colonies to a more favorable locality or by replacing those destroyed by fresh importations.

Nor are the cases cited by the respondents controlling. It is true that one who keeps wild animals in captivity must see to it at his peril that they do no damage to others. But it is not true that whenever an individual is liable for a certain act the state is liable for the same act.

In liberating these beaver the state was acting as a government. As a trustee for the people and as their representative it was doing what it thought best for the interests of the public at large. Under such circumstances we cannot hold that the rule of such cases as those cited is applicable.

We reach the conclusion that no recovery can be had under this claim. It is assumed, both by the respondents and by the appellant, that the Board of Claims had jurisdiction to determine the questions involved. That we do not discuss.

The judgment of the Appellate Division and the determination of the Board of Claims must be reversed and the claim dismissed, with costs in Appellate Division and in this court.

HISCOCK, Ch. J., CHASE, HOGAN, POUND, McLAUGHLIN and CRANE, JJ., concur.

Judgment reversed, etc.