Scileppi, J.
Appellants, consisting of several officials of the State of New York (hereinafter referred to as the State) have taken a direct appeal to our court from a judgment of the Supreme Court, Onondaga County, which declared section 358-a of the Agriculture and Markets Law to be contrary to the Fourteenth Amendment of the Constitution of the United States and article I (§ 6) of the New York State Constitution and enjoined enforcement of the aforesaid statute.
This appeal presents a problem of critical importance. Throughout history, man has relied upon the lower forms of life for food, clothing and shelter. Indeed, long before the advent of what historians have come to term the Commercial Revolution, the skins and pelts of animals had played an essential role in the development of man and his trade. In recent years, however, the scientific community has warned that since the year 1600, 130 animal species and 228 subspecies have become extinct and numerous other species will soon be lost to the world forever unless something is done to curtail man’s commercial exploitation of the wildlife of the world. While it is not our function here to engage in any form of *187 biblical exegesis, it is obvious that man has only too readily acceded to the blessing enunciated in Genesis encouraging him to '"be masters of the fish of the sea, the birds of heaven, the cattle, all the wild beasts and all the reptiles that crawl upon the earth ’ ” (Genesis, ch. 1, verse 26, Jerusalem Bible, p. 16).
It was in response to the great need to preserve wildlife that the Legislature, sharing the concern expressed by the people of our State, Nation and planet, recently enacted two laws in an effort to safeguard the wildlife of the world. The first of these laws, chapter 1047 of the Laws of 1970 added section 187 to the Conservation Law (known as the Harris Law) and provided that after September 1, 1970: "the importation, transportation, possession or sale of any endangered species of fish or wildlife, or hides or other parts thereof, or the sale or possession with intent to sell any article made in whole or in part from the skin, hide or other parts of any endangered species of fish or wildlife is prohibited, except under license or permit from the Department.” This statute defined as endangered, those species designated by the United States Secretary of the Interior and vested the New York State Commissioner of Environmental Conservation with the power to amplify the Federal list by the addition of those species which he considers endangered. In addition, the commissioner was given the authority to remove "any such species as he may determine after investigation to be no longer endangered from the restrictions of this section ”.
The second act promulgated was chapter 1048 of the Laws of 1970. This enactment added section 358-a to the Agriculture and Markets Law (hereinafter referred to as the Mason Law) which provides that after September 1, 1970: “1. No part of the skin or body, whether raiv or manufactured, of the following species of wild animals or the animal itself may be sold or offered for sale by any individual, firm, corporation, association or partnership within the state of New York after the effective date of this section:—Leopard (Panthera pardus), Snow Leopard (Uncia uncia), Clouded Leopard (Neofelis nebulosa), Tiger (Panthera tigres), Cheetah (Acinoyx jubatus), Alligators, Caiman or Crocodile of the Order Crocodylia, Vicuna (Vicugna vicugna), Bed Wolf (Canis niger), or Polar Bear (Thalarctos maritimas), nor after a period of twelve months from the effective date of this section, of the following species: — *188 Mountain Lion, sometimes called Cougar (Felis Concolar), Jaguar (Panthera onca), Ocelot (Felis pardalis), or Margay (Felis wiedii).” (Emphasis added.) The Mason Law further provides for the issuance of warrants for the search and seizure and forfeiture of all goods held in violation of its provisions and for the issuance of licenses permitting the import of the forbidden species for “ zoological, educational, and scientific purposes ”.
As a result of this legislation, the A. E. Nettleton Company, which has for over 90 years engaged in the manufacture, sale and distribution of men’s footwear made from alligator, crocodile and caiman skins, initiated the instant action for a judgment declaring both the Harris Law and the Mason Law to be unconstitutional and for an injunction enjoining the enforcement of the aforesaid statutes. Three additional parties intervened on the side of the Nettleton Company: (1) J. Fox, Inc., representing the spotted fur industry; (2) Sibley, Lindsay & Curr Company, a division of Associated Dry Goods Corporation, representing retailers selling merchandise covered by the Mason Law; and (3) the Reptile Products Association (the Nettleton Company and the three interveners will hereinafter be referred to as the Industry).
The Supreme Court, Onondaga County, held that the Harris Law was a laudable complement to the Federal Endangered Species Conservation Act of 1969 (83 U. S. Stat. 275, 91st Cong. 1st Sess., Pub. Law, 91-135), and suffered from no constitutional infirmity. The court, however, held that the Mason Law was violative of the Fourteenth Amendment of the Federal Constitution and article I (§ 6) of the New York State Constitution on the ground that it is an unreasonable exercise of the State police power and deprived the Industry of property without due process of law. Upon the State’s appeal to our court, we have allowed the National Audubon Society, Inc., the Environmental Defense Fund and the New York Zoological Society to file briefs, amicus curiae, in support of the State’s contentions.
Since the Industry has chosen not to cross-appeal the determination below that the Harris Law was constitutional, the sole question before us is the constitutional validity of the Mason Law. This requires a two-step analysis: (1) Does the State of New York have the power to legislate in this area and, if the *189 answer is in the affirmative, (2) was that power validly-exercised.
The Industry has made a two-fold attack on the power of the State to promulgate legislation in the area of wildlife preservation arguing that the Mason Law violates both the Supremacy Clause (art. VI, § 2) and the Commerce Clause (art. I, § 8, cl. 3) of the Federal Constitution. Initially, it is our view that preemption under the Supremacy Clause is a constitutional issue cognizable in a direct appeal pursuant to CPL 5601 (subd. [b], par. 2). In so holding, we are aware that the Supreme Court of the United States has held (Swift & Co. v. Wickham, 382 U. S. 111, 120-123) that such a question is not a Federal constitutional issue within the meaning of the U. S. Code (tit. 28, § 2281) which requires the invocation of a three-judge court whenever the enforcement of a State statute is sought to be enjoined “upon the ground of the unconstitutionality of such statute ”. The court in Swift adopted the following rationale: “when the complaint alleges not the traditional Due Process Clause, Equal Protection Clause, Commerce Clause, or Contract Clause arguments, but rather that the state statute or regulation in question is pre-empted by or in conflict with some federal statute or regulation thereunder. Any such pre-emption or conflict claim is of course grounded in the Supremacy Clause of the Constitution: if a state measure conflicts with a federal requirement, the state provision must give way. Gibbons v. Ogden, 9 Wheat. 1. The basic question involved in these .cases, however, is never one of interpretation of the Federal Constitution but inevitably one of comparing two statutes.” (Swift, supra, at p. 120). Since, however, Swift dealt with a question of Federal procedure, it is not binding on us and we may reach the merits of the instant appeal.
Taking the Supremacy issue first, it is argued by the Industry that the recent Federal Endangered Species Conservation Act of 1969 (Public Law 91-135, 83 U. S. Stat. 275) is an elaborate, comprehensive and pervasive scheme of Federal regulations which necessitates the conclusion that State power has been curtailed and that the field of wildlife preservation has been pre-empted by Congress (see San Diego Unions v. Garman, 359 U. S. 236; Pennsylvania v. Nelson, 350 U. S. 497; Cloverleaf Co. v. Patterson, 315 U. S. 148). This argument was rejected by the *190 court below and we are in agreement with that court’s resolution of this issue.
It is true that the Federal Act is a piece of comprehensive legislation[1] which provides for the systematic prohibition of the importation into our country of certain species designated as endangered by the Secretary of the Interior (§ 3 of the Act), and requires the Secretary of State to promote the protection of threatened species in their countries of origin and regulates the importation of other species of animals by restricting points of entry and requiring documentation of origin (§4).
The Industry’s pre-emption argument is, however, not persuasive. In Florida Avocado Growers v. Paul (373 U. S. 132) the Supreme Court sustained the .constitutionality of a California statute which prohibited the marketing within that State of a certain avocado which was marketable under Federal standards, and rejected the argument that the Federal legislation pre-empted State action, holding that pre-emption could only occur if there was “ such actual conflict between the two schemes of regulation that both cannot stand in the same area [or] evidence of a congressional design to pre-empt the field ” (Florida Avocado Growers, supra, at p. 141). Turning to the first test (State power to' legislate), there is no real conflict between the Federal statute and the Mason Law. While it is true that our State statute includes species which are not on the Federal list (see Appendix annexed to this opinion), there has been no showing that compliance with both the Federal and State law is an impossibility (see Bibb v. Navajo Frgt. Lines, 359 U. S. 520; Morgan v. Virginia, 328 U. S. 373; Union Bridge Co. v. United States, 204 U. S. 364). Nor has it been demonstrated that the Mason Law could not be enforced without impairing the effectiveness of the Federal Act. The Industry has not shown that wildlife conservation is a matter exclusively within the sphere of Federal competence. On the contrary, it is almost axiomatic that wildlife conservation has been a matter traditionally left to the States (see Barrett v. State of New York, 220 N. Y. 423, 427). Thus, it would seem that the preemption question narrows down to whether Congress by the *191 1969 Act has evidenced its design to exclude State action. We think it has not. Federal displacement of the ‘ ‘ historic police powers of the States ” should not be decreed “ unless that was the clear and manifest purpose of Congress” (Rice v. Santa Fe Elevator Corp., 331 U. S. 218, 230). “ In other words, we are not to conclude that Congress legislated the ouster [of the Mason Law by the Federal Act] in the absence of an unambiguous congressional mandate to that effect ” (Florida Avocado Growers v. Paul, supra, at pp. 146-147). We find no such mandate. On the contrary, the Federal statute specifically provides for the enforcement of State laws such as the Mason Law. Section 7 of the Federal Act makes any person who: “ (a) * * * (2) delivers, carries, transports, or ships, by any means whatever, or causes to-be delivered, carried, transported, or shipped for commercial or noncommercial purposes or sells or causes to be sold in interstate or foreign commerce cmy wildlife taken, transported, or sold in cmy marnier in violation of any law or regulation of any State or foreign country; or (b) * * * (2) sells or causes to be sold in interstate or foreign commerce any products manufactured, made, or processed from any wildlife taken, transported, or sold in any manner in violation of any law or regulation of a State or a foreign country ” (emphasis added) subject to the enforcement provisions of the Act. Moreover, the regulations promulgated by the Secretary of Interior which preceded the Federal list of Endangered Species also indicate that: “ § 17.16 Other laws applicable. Nothing in this part, nor any permit, exception, or permission issued hereunder, shall be construed to relieve any person from any provision of any other laws, rules, or regulations of the States or the United States.” (35 Federal Register 8495.)
The Industry’s argument that these sections refer only to State regulations of indigenous species lacks merit. We find no such requirement in the statute. At most the statute is ambiguous in this regard and thus falls short of the unequivocal intent which is necessary before we can decree pre-emption. Moreover, Congress has specifically given the State the power to enact legislation involving non-indigenous species. This statute (U. S. Code, tit. 16, § 667e) reads as follows: “ § 667e. Dead bodies of game animals or game or song birds, subject to laws of State. All dead bodies, or parts thereof, of any foreign *192 game animals, or game or song birds the importation of which is prohibited, or the dead bodies, or parts thereof, of any wild game animals or game or song birds transported into any State or Territory, or remaining therein for use, consumption, sale, or storage therein, shall upon arrival in such State or Territory be subject to the operation and effect of the laws of such State or Territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such animals or birds had been produced in such State or Territory ”. (Emphasis added.)
The above-quoted statute is also dispositive of the Industry’s contention that the Legislature lacked the power to enact the Mason Law under the Commerce Clause. In People v. Boatman (180 N. Y. 1) we construed section 667e (U. S. Code, tit. 16, then 31 U. S. Stat. 188-189) and said: “ The action of Congress has taken away all questions of interstate commerce, so that the state can act with entire freedom and can prevent the shipment of game into or out of its own territory; and if game is imported, it can regulate or prohibit, the sale thereof.” (supra, at p. 10). In any event, the Mason Act merely prohibits the sale or offer for sale, within New York State, of skins or products made from the forbidden species and it is our view that the Industry’s Commerce Clause argument is untenable.
Inasmuch as the State clearly had the power to enact the Mason Law, the next question is whether that legislation represents a constitutional exercise of that power. The issue is again double-edged: (1) Is the Mason Law a valid exercise of the police power and, (2) does it deprive the Industry of property without due process of law.
At the outset it must be emphasized that “ [t]he police power of the State is the least limitable of all the powers of government ” (Matter of Engelsher v. Jacobs, 5 N Y 2d 370, 373, cert. den. 360 U. S. 902) and we have sustained its application to the conservation of fish and wildlife (Barrett v. State of New York, 220 N. Y. 423, supra) and other areas of beauty and esthetics (New York State Thruway Auth. v. Ashley Motor Ct., 10 N Y 2d 151; People v. Stover, 12 N Y 2d 462, app. dsmd. 375 U. S. 42 [for want of substantial Federal question]). In Barrett (supra, at p. 428) we said: “ The police power is not to be limited to guarding merely the physical or material *193 interests of the citizen. His moral, intellectual and spiritual needs may also be considered. The eagle is preserved; not for its use but for its beauty.”
Since wildlife conservation is within the police power, our inquiry is limited to the question whether the means employed are reasonable (see, e.g., People v. Bunis, 9 N Y 2d 1, 4; Good Humor Corp. v. City of New York, 290 N. Y. 312). A strong presumption of validity attaches to legislative enactments and a party who. is attacking the constitutionality of a statute bears the heavy burden of establishing unconstitution ality beyond a reasonable doubt (Fenster v. Leary, 20 N Y 2d 309; Matter of Van Berkel v. Power, 16 N Y 2d 37; Matter of Roosevelt Raceway v. Monaghan, 9 N Y 2d 293).
We find that in the instant case, the Industry has not met its burden. As we said in People v. Bunis (supra, at p. 4): ‘ ‘ The police power is 'very broad and comprehensive ’ and in its exercise 'the conduct of an individual and the use of property may be regulated so as to interfere, to some extent, with the freedom of the one and the enjoyment of the other.’ (Matter of Jacobs, 98 N. Y. 98, 108, supra.) But, in order for an exercise of the police power to be valid, there must be ‘ some fair, just and reasonable connection ’ between it and the promotion of the health, comfort, safety and welfare of society.” Viewed in this light, the Mason Law would be an unreasonable exercise of the police power only if we are able to say that it is unreasonable for the State of New York to declare that the interdiction of all sales or offers for sale of skins of certain animals or products made therefrom is necessary for the continued existence of those animals. Such a conclusion is not warranted in the instant case.[2] The wildlife of the world is a vital asset to the people of this State. As the Legislature stated in the Harris Act (L. 1970, ch. 1047): “ The legislature of the state of New York hereby finds that the protection of endangered species of wildlife is a matter of general state concern. The recently enacted Federal Endangered Species Conservation Act of 1969 provides for the protection of .species of wildlife threatened with worldwide extinction and for restricting and *194 regulating the interstate transportation of wildlife taken in violation of state, national or foreign laws. The states, however, must assume the responsibility of restricting the transportation, possession and sale of these species within their respective jurisdictions to assure the continued survival of many of the nation’s endangered species of fish and wildlife. The legislature hereby finds that by eliminating the market for these species in New York State, the potential for their continued existence will be strengthened.” The protection of the animals listed in the Mason Act is necessary not.only for their natural beauty and for the purpose of biological study, but for the key role that they play in the maintenance of the life cycle. Thus, the protection of these animals is essential for the welfare of our society, and we do not agree with the Industry that the Mason Law goes too far.
The Industry, conceding that some degree of protection is necessary for the preservation of wildlife since it may ultimately affect the continued existence of their own business, argues that the Mason Law is a superfluous curtailment of their rights because adequate protection is afforded by both the Federal statute and the Harris Law and for the additional reason that some of the animals named in the Mason Act are not listed as endangered by the Secretary of the Interior. The wisdom of a particular statute is beyond the scope of judicial review (Ferguson v. Skrupa, 372 U. S. 726, 730; Wasmuth v. Allen, 14 N Y 2d 391) and we should not substitute our judgment for that employed by the Legislature in enacting the statute in question. Implicit in the Industry’s argument is the assumption that animals not on the Federal list are not threatened with extinction and do not require protection. The minutes of a hearing held prior to the enactment of the Mason Law reveal that the Legislature specifically considered whether the tiger, vicuna, red wolf, polar bear, mountain lion, jaguar, ocelot, margay, leopard, cheetah and crocodile are subjects of commercial exploitation and are threatened. Thus, it appears that the Legislature rejected the Industry’s assumption and found otherwise. Accordingly, we do not have the power to disturb these findings.
The mere fact that an animal is not on the Federal list does not mean it is not endangered, since there is no agreement *195 among experts in this field. For example, the Secretary of the Interior- lists only four varieties of leopard and one Asian cheetah on the Federal list while the president of the East African Wildlife Society says that ‘ ‘ all spotted cats in Africa [are] endangered, owing to the over commercialization of their skins ”. As we have seen, the Mason Law will, however, protect all of these animals and other threatened animals (see Appendix annexed to this opinion) which, though not within the Secretary of the Interior’s technical definition of endangered species, are the subject of indiscriminate killing.
While it is true that the banning of ‘ ‘ Alligators, Caiman or Crocodile of the Order Crocodylia ” may include some reptiles which are in adequate supply, it is clear that the Legislature did so because it is practically impossible to determine, without expert detection at great expense, whether a given skin is from a threatened species or one that is not threatened. Thus, by preventing the sale or offer for sale within the State of skins or products made from the skins of animals listed in the Mason Law, one market for these goods is removed and the killing of these animals is rendered less lucrative. In so doing the Mason Law contributes to the effective enforcement of the Harris Law and the Federal Law. Moreover, it is also evident that poachers are not concerned with the niceties of animal classification and the prospective purchasers of animal skin products have no way of knowing which skins are from endangered species and which are not. If the Industry wishes to take issue with this view, it is our opinion that the proper procedure is for them to seek amendment of the statute. Furthermore, the Mason Law should provide an impetus to the Industry to develop methods of sustained yield breeding which would guarantee the existence of their business in the years to come.
Nor is there any merit to the Industry’s reliance on cases such as People v. Bunis (9 N Y 2d 1, supra) where we held that it was an unreasonable exercise of the police power for the Legislature to prohibit the sale of coverless magazines since the statute was broader than the evil which the Legislature sought to prevent, namely schemes to defraud magazine publishers. We said: “ But, even were we to suppose that it had power to prohibit such corrupt sales, it is unreasonable and beyond the legitimate exercise of the police power for the Legislature *196 to interdict all sales, permissible and illicit alike, in order to prevent those which are illicit.” (supra, at p. 4). Unlike Bums, the evil in the instant case which the Legislature sought to prevent is as broad as the statute itself. All the listed animals need protection either because they are endangered or, in the case of the crocodiles, because processed skins of endangered animals for all practical purposes are indistinguishable from those in abundant supply. In this regard, it is most significant that the Legislature has not, as it did in Bums, prohibited permissible and illicit sales alike in order to prevent fraudulent sales. It has considered the problem and reasonably determined that the exigencies of the problem of wildlife conservation are critical enough to necessitate the legislative declaration that all sales are illicit. It is our view that since this is a reasonable exercise of the police power, we are unable to say that the Mason Law is constitutionally defective.
As to the Industry’s contention that the Mason Law is confiscatory in that it bars all sales or offers for sale after September 1, 1970 thus rendering valueless the inventory on hand and imported into the State while it was legal to do so, we do not think that such a result was the intent of the Legislature. Such a prohibition could in no way effectuate the purpose of the Mason Law since it could not afford protection to the animals already destroyed. It is, therefore, our view that the Mason Law does not apply to skins, hides, or products therefrom which arrived in the United States of America on or before August 31, 1970, providing that the time of arrival shall be documented either by official U. S. Customs records or authentic inventory or shipment records of the holder or any predecessor in title which is a United States corporation, firm, or person regularly engaged in the business of handling the products on August 31, 1970.
Accordingly, the judgment appealed from should be reversed, without costs, and the matter remitted to Special Term for the entry of a judgment declaring section 358-a of the Agriculture and Markets Law constitutional.
Judges Bergan, Breitel, Jasen and Gibson concur with Judge Scileppi ; Chief Judge Fuld and Judge Burke dissent and vote to affirm on opinion at Special Term.
*197 Judgment reversed, without costs, and case remitted to Special Term for further proceedings in accordance with opinion herein.
APPENDIX
COMPARISON OF THE SPECIES PROTECTED BY THE MASON LAW WITH THOSE ON THE FEDERAL ENDANGERED LIST
SPECIES PROTECTED AS OF SEPTEMBER 1, 1970 MASON LAW FEDERAL LIST AS OF JUNE 2, 1970 (35 Federal Register 8491-8498)
Leopard (Panthera pardus) Formosan Clouded Leopard (Neofelis nebulosa brachyurus)[2]
Snow Leopard (Uncia uneia) Sinai Leopard (Panthera pardus jarvisi)
Clouded Leopard (Neofelis nebulosa) Barbary Leopard (Panthera pardus panthera)
Anatolian Leopard (Panthera pardus tulliana)[2]
Tiger (Panthera tigres) Bali,, Tiger (Panthera tigris balica)
Javan Tiger (Panthera tigris sondaica)
Caspian Tiger (Panthera tigris virgata)
Sumatran Tiger (Panthera tigris sumatrae)
Cheetah (Acinoyx jubatus) Asiatic Cheetah (Acinonyx jubatus venaticus)
Alligators, Caiman or Crocodile of the Order Crocodylia[1] Orinoco crocodile (Crocodylus intermedius)[2]
*198 SPECIES PROTECTED AS FEDERAL LIST AS OF OF SEPTEMBER 1, 1970 JUNE 2, 1970 MASON LAW
Cuban crocodile (Crocodylus rhombifer)[2]
Morelet’s crocodile (Crocodylus moreletti)[2]
Nile Crocodile (Crocodylus niloticus)[2]
Yacare (Caiman yacare)
Vicuna (Vicugna vicugna) Vicuna (Vicugna vicugna)
Red Wolf (Canis niger)[1]
Polar Bear (Thalarctos maritimus)
PROTECTED AS OF SEPTEMBER 1, 1971
Mountain Lion, also know as Cougar (Felis Concolar)
Jaguar (Panthera onca)
Ocelot (Felis paradalis)
Margay (Felis wiedii)

. See, also, U. S. Code, tit. 16, § 671 et seq. (establishing wildlife preserves); § 715 et seq. (protection of migratory birds); § 668aa et seq. (protection of endangered native species).

. A parallel may be drawn between Federal and State pollution laws and the Mason Law, albeit pollution has a more direct effect on the health and welfare of human beings.

. The Federal list of domestically endangered species (34 Federal Register 5034-5035 and 35 Federal Register 13519-13520) lists Texas Red Wolf (Canis rufus rufus) and American alligator (Alligator mississippiensis).

. These species were temporarily removed from the list on July 27, 1970 because the Secretary of the Interior determined that their prior inclusion was improper in that they had not been included in a notice of proposed rule making required under his Rules and Regulations (35 Federal Register 12121-12123).