**PALLADIO, INC., Plaintiff,**

**v.**

**Henry A. DIAMOND, as Commissioner of the Department of Environmental Conservation of the State of New York, Don J. Wickham, as Commissioner of Agriculture and Markets of the State of New York, John P. Lomenzo, as Secretary of State of the State of New York, Frank S. Hogan, as District Attorney of New York County, and Howard R. Leary, as Police Commissioner of the City of New York, Defendants.**

**No. 70 Civ. 3551.**

United States District Court,
S. D. New York.

Nov. 25, 1970.

Joseph L. Forscher, New York City, for plaintiff.

Louis J. Lefkowitz, Atty. Gen. of N. Y., for defendants; Philip Weinberg and Thomas F. Harrison, Asst. Attys. Gen., of counsel.

MANSFIELD, District Judge.

It is now generally recognized that the destruction or disturbance of vital life cycles or of the balance of a species of wildlife, even though initiated in one part of the world, may have a profound effect upon the health and welfare of people in other distant parts. We have come to appreciate the interdependence of different forms of life. We realize that by killing certain species in one area we may sound our own death knell.

For these reasons ecology has become everyone's business. Like pollution it does not cease to be of vital concern merely because the problem is created at a distant point. These principles are here challenged, at least insofar as they are invoked as a basis for state laws prohibiting the sale of crocodile skins in New York.

Plaintiff, a Massachusetts corporation, has brought this action against various officials of the State of New York in charge of administering and enforcing its newly-enacted Harris Law,[1] and the Mason Law,[2] charging that the Mason Law violates the Federal Constitution and that enforcement of the Harris Law in accordance with the provisions of the Mason Law is also unconstitutional to the extent that both laws prevent plaintiff from offering for sale and selling men's shoes made with the skins of species of Alligators, Caimans or Crocodiles of the Order Crocodylia which are not listed on the Endangered Species List promulgated by the Secretary of the Interior of the United States.

In A. E. Nettleton Company v. Diamond, 27 N.Y.2d 182, 315 N.Y.S.2d 625, 264 N.E.2d 118 (1970), the New York Court of Appeals upheld, under both state and federal grounds, the constitutionality of the laws attacked here today. Plaintiff was not represented in that suit. It argues that New York's highest court was in error, and seeks a temporary injunction against the enforcement of these acts as applied to the importation of Crocodylia skins and the appointment of a three-judge court. For the reasons stated below plaintiff's motion is denied; it has not raised a substantial federal question.

The Harris bill, n. 1, *supra*, provides that the protection of endangered species of wildlife is a matter of general state concern, and that the states must

1. Ch. 1047, of the Laws of 1970 (enacted by the State of New York on May 20, 1970) added § 187 to the State's Conservation Law, McKinney's Consol.Laws, c. 65, to be effective September 1, 1970.

2. Ch. 1048, of the Laws of 1970 (also enacted May 20, 1970), added § 358–a to the State's Agriculture and Markets Law, McKinney's Consol.Laws, c. 69, to be effective September 1, 1970.

assume their responsibility. § 1. Section 2 of that Act amends the state Conservation Law by prohibiting the importation, sale, or possession with intent to sell, of any article made from the skin of any endangered species. An "endangered" species is one designated by the New York Department of Environmental Conservation, by order filed with the Secretary of State.

The Mason bill, n. 2, *supra,* is much more explicit and restrictive, providing in pertinent part:

"§ 358–a. *Sale of certain wild animals or wild animal products prohibited*

"1. *No part of the skin* or body * * * of the following species of wild animals * * * *may be sold* or offered for sale by any individual * * * after the effective date of this section:— * * * *Alligators, Caiman or Crocodile of the Order Crocodylia, * * * *" (Emphasis added)

Concededly the Mason bill damages plaintiff's business operation, which is the importation of shoes from Europe. Most of these shoes are made from the skins of Alligator, Caiman or Crocodiles of the Order Crocodylia (i. e., alligator shoes). Last year plaintiff sold almost $600,000 worth of alligator shoes, and at least 40% of these sales were to New York retailers.

Prior to New York's enactment of these laws, the Federal Government had in December, 1969, enacted the Endangered Species Conservation Act of 1969, P.L. 91–135, 83 Stat. 275, codified in part in 16 U.S.C.A. § 668aa et seq. (Supp. March, 1970), to deal with the serious problem of the rapid decimation and extinction of various species of animals. This Act forbids importation of species found by the Secretary of the Interior to be "threatened with world wide extinction," 16 U.S.C.A. § 668cc–2 (Supp. March, 1970), as well as interstate transportation of wildlife taken in violation of national, state or foreign laws. 18 U.S.C.A. § 43(a) (2) (Supp. March, 1970). Pursuant to the Act the Secretary of the Interior, after notice and an opportunity to be heard, prepared an "endangered species list" and prohibited the importation into the United States of articles made with the skins of mammals, birds, amphibians, reptiles, and fish threatened with extinction by publishing the names of the species in the Federal Register. See 50 C. F.R. §§ 17.10, 17.11, in 35 Fed.Reg. 8493 (June 2, 1970). The Secretary's current regulations presently list only one species of foreign Crocodylia, Caiman Yacare, the importation of which is barred. He has rescinded the designation of several other foreign species of Crocodylia because adequate notice as to those species had not been given. Compare 35 Fed.Reg. 8491, 8497 App. A (June 2, 1970), with 35 Fed.Reg. 12121–23 (July 29, 1970).

Plaintiff has no quarrel with the federal law and its regulations. It strongly objects, however, to the new state laws which amplify and are much stricter than the federal law.

First, plaintiff argues that there were no hearings on the Mason Law (which in effect explicitly forbids the importation of alligator shoes). The New York Court of Appeals' opinion, at 194, 315 N.Y.S.2d at 634, 264 N.E.2d at 124, stated:

"The minutes of a hearing held prior to the enactment of the *Mason Law* reveal that the Legislature specifically considered whether the Tiger Vicuna, Red Wolf, Polar Bear, Mountain Lion, Jaguar, Ocelot, Margay, Leopard, Cheetah and Crocodile are subjects of commercial exploitation and are threatened. Thus, it appears that the Legislature rejected the Industry's assumption and found otherwise. Accordingly, we do not have the power to disturb these findings." (Emphasis added)

Plaintiff states that the court was in error: "The only hearings the Legislature conducted," says the affidavit of Mr. David Klapisch, Chairman of the Reptile Products Association, "were in connec-

tion with the Harris Act. Since the Harris Act was patterned upon the Federal Foreign Endangered Species Conservation Act, which the industry supports, there was no objection voiced by the industry thereto." Aff. at p. 5.

 Rather than decide whether the Legislature had hearings on the Mason Act, we will assume for present purposes that plaintiff is correct.[3] The answer is that since there *were* legislative hearings on the Harris Act, the legislature was justified in using its findings on one bill to support another bill dealing with the same subject matter, albeit in a stronger manner. Moreover, there is no constitutional requirement that the legislature conduct hearings and build a record when it passes a law. E. g., Bi-Metallic Investment Co. v. State Board of Equalization, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915) (Holmes, J.). As Professor Cox has noted in his The Supreme Court, 1965 Term, Foreword: Constitutional Adjudication and the Promotion of Human Rights, 80 Harv.L. Rev. 91, 105 (1966) (footnotes omitted):

> "[A] statute must be judged constitutional if any set of facts which can reasonably be conceived would sustain it. No case has ever held that a [legislative] record is constitutionally required. [This view] is also supported by the cases upholding congressional legislation under the commerce clause prior to the nineteen-thirties, much of which apparently rested upon factual conclusions for which no legislative record could be cited. The principle is not merely one of deference to Congress or the states. It rests upon appreciation of the fact that the fundamental basis for legislative action is the knowledge, experience, and judgment of the people's representatives, only a small part, or even none, of which may come from the hearings and reports of committees or debates upon the floor."

Plaintiff next contends that the only endangered species are those found to be endangered by the United States Secretary of Interior; that the New York legislature could not have reasonably made findings different from the federal findings; that one can distinguish between these species and non-endangered species; and that New York's complete prohibition is, therefore, unreasonably overbroad.

Plaintiff has presented no convincing proof that the first part of its argument may be correct. Nowhere does the Secretary of Interior indicate that his list of endangered species is definitive. The state's list of endangered species may be broader than the federal list simply because the State Legislature did not see fit to wait until only a handful of species remained before it passed a law affording protection. We cannot overrule the legislature for being cautious. Extinct animals, like lost time, can never be brought back. They are gone forever. Since 1600 A.D. the world has destroyed for all time 130 animal species and 288 subspecies. F. Wayne King, Curator of Herpetology for the New York Zoological Society and a member of the International Crocodile Society

---

3. Whether or not there were hearings on this act is a matter in dispute. Plaintiff argues in its Supplemental Memorandum at 3:

> "The defendants have not disputed that there were neither legislative hearings conducted in connection with the Mason Law nor legislative findings relating thereto."

However, the Defendants' Memorandum of Law, which was filed well before Plaintiff's Reply Memorandum, explicitly states, at p. 4:

> "Agriculture and Markets Law § 358–a, enacted by L.1970, ch. 1048 [the Mason Law] enumerates several species found by the Legislature to be threatened with extinction, including the leopard, tiger, and 'alligators, caiman or crocodile of the order crocodylia,' and forbids the sale or offer for sale within this State of any 'part of the skin or body, whether raw or manufactured,' of those species. *These legislative findings were based on the testimony of distinguished biologists elicited at legislative hearings.*" (Emphasis added)

and the American Alligator Council, supports this view in his affidavit (at pp. 4–5), which was before the New York Court of Appeals:

"The fact is that today a number of species of crocodilians are in danger of extinction, and virtually every species is declining in numbers. In every case the threat to their continued survival comes principally from hidehunters slaughtering the animals at a rate faster than they can reproduce, coupled with the killing of the larger breeding adults. Nowhere is hidehunting practiced on a sustained-yield basis, taking only the surplus animals and leaving a breeding population intact. The alligator population in south Florida has declined 30% in numbers due to poaching in the period 1954–1968 alone. The same rapid dwindling is occurring in the African and South American habitats of crocodiles and caimans. Even where taking is unlawful, the economic incentives for poaching are powerful, and only legislation eliminating the market can possibly halt the extinction of the alligator, caiman and crocodile."

■ Plaintiff cites as proof of the definitiveness of the federal study the fact that the Secretary promulgated his lists only after investigating the status of wildlife through the world for upwards of two and one-half years, and after consultation with scientists, conservation groups, and government officials of at least 55 foreign countries. We disagree. The fact that the Secretary of Interior had to conduct such an extensive study shows that the determination of what species are endangered is not an easy one. We cannot override the legislature because it came to a conclusion different from the Secretary of Interior. If the experts disagree—and apparently they do, see A. E. Nettleton Co. v. Diamond, Ct.App. (1970), 27 N. Y.2d 182, 315 N.Y.S.2d 625, 264 N.E.2d 118,—the legislature has the right to accept one line of authorities rather than another.

The New York Court of Appeals stated, at 196, 315 N.Y.S.2d at 635, 264 N. E.2d at 125:

"All the listed animals [in the Mason Law] need protection either because they are endangered or, in the case of the crocodiles, because processed skins of endangered animals for all practical purposes are indistinguishable from those in abundant supply."

Plaintiff argues that the state court was simply mistaken, and it is possible to distinguish between the federally listed endangered species and other species.

The state court relied on the authority of Dr. F. Wayne King, but plaintiff says that Dr. King has since then "vastly retracted that claim" (Aff. of David Klapisch, Chairman of the Reptile Products Assn., at 3), and that "persons engaged in the trade" can distinguish the processed skins of different species. Id. at 3–4 (emphasis added). In rebuttal Dr. King labels Mr. Klapisch's claim as "patently false" and states that while it is probably possible to distinguish one general group of alligators from another, within these groups it is very difficult to distinguish. Thus the common caiman has four subspecies and only one of these, the Caiman Crocodilus Yacare, is on the federal endangered list, but it is difficult to distinguish this one from the others on the basis of tanned hides. (Aff. of Dr. King, Oct. 28, 1970, at 2.)

■ The New York legislature could reasonably have taken the view espoused by Dr. King. But even accepting plaintiff's contention it was appropriate for the legislature to protect all Crocodylia in order to prevent successive exterminations of various species. For example the affidavit of Herndon Dowling, research associate in the Department of Herpetology of the American Museum of Natural History, tells us that the best type of crocodilian leather has been alligator hide. But the American alligator (Alligator Mississippienses), "despite * * * the greatest attempts at conservation of any crocodilian, is nevertheless on the verg of extinction." In the

last decade 99% of these alligators outside of National Parks were killed. After virtual elimination of the domestic supply, the industry exploited the foreign, more exotic species, such as the Nile crocodile [4] (referred to in plaintiff's affidavit) and the Morelet's crocodile.

Now apparently the killers are moving to the Caiman skins. "Crocodilians of this genus were spared the main pressure of hide hunters until the mid-1960's because they are relatively small (8 to 12 feet) and have bone in the belly-skin, making for more difficult processing and less valuable leather. Thus the commercial taking and use of caiman is not due to concern for conservation but rather to the fact that more profitable species such as alligator are no longer available." Mr. Dowling ominously concludes: "The persistent, recurring pattern is that whenever a wild species becomes important to the leather industry, it becomes threatened with extinction."

Next plaintiff argues that New York may not constitutionally interdict interstate commerce where the sole purpose of the statute is aesthetic. The legal validity of the proposition is questionable. See, e. g., Barrett v. New York, 220 N.Y. 423, 428, 116 N.E. 99, 101 (1917) ("The eagle is preserved, not for its use but for its beauty"). However, it is unnecessary to test it for the reason that there is ample evidence of vital non-aesthetic interests on the part of the state which justify its exercise of its broad police powers to discourage the extinction of foreign Crocodylia. Mr. William Conway, General Director of the New York Zoological Society, testified:

"It is the world, and not merely the natives of the countries in which a species of animal happens to be found, which suffers when that species dies out. * * * In the case of species in commercial use, extinction means a permanent diminishing of the opportunities for livelihood * * * of workers in New York State who process pelts. Protection of the animals now can give them time to repopulate. * * * Whatever immediate difficulties the Mason Law may impose are likely to be temporary. If the animals are permitted now to be over-exploited and become extinct the difficulties will be permanent." (Aff. at 4–5).

Plaintiff's argument, that the Mason Law should be struck down because it is preempted by the exclusive system of regulation established by federal law, was adequately considered and discussed by the New York Court of Appeals, which properly rejected it. There is no inconsistency or conflict between the recently enacted federal Endangered Species Conservation Act of 1969, P.L. 91–135, 16 U.S.C.A. § 668aa et seq. (Supp. March 1970), and the Mason Act. Cf. Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). Moreover, this federal law and the regulations promulgated under it explicitly recognize the role of the states. Section 7(a) (2) of P.L. 91–135 provides that the importation of wildlife in violation of state law (as well as the law of any foreign country) is subject to certain penalties. See also, 50 C.F.R. § 17.16, 35 Fed.Reg. 8495 (June 2, 1970). We likewise find no merit in plaintiff's contention that the Mason Law interferes with Congress' power to regulate commerce and to make treaties, with federal control over foreign affairs, and with the supremacy clause of the Constitution. On the contrary the Endangered Species Act invites state action.

Equally baseless is the argument that the Mason Act and Harris Law deprive plaintiff of property without due process because plaintiff will lose money. Plaintiff has no property right in the wildlife of foreign countries, and the mere loss of profits is not

4. This crocodile was once so numerous that it was said that the dogs would drink at the Nile running along, so that they would not be seized by the crocodile. Pliny, Natural History, Book 8, § 148.

a basis for declaring the state laws unconstitutional, cf. Nebbia v. New York, 291 U.S. 502, 523, 54 S.Ct. 505, 78 L.Ed. 940 (1934).

Plaintiff's other arguments are not worthy of discussion. Most of them are of the type that would more properly be presented to the legislature. See, e. g., the Klapisch affidavit at 6, to the effect that the Mason Law will reduce the price for the skins of crocodylia and that natives will kill *more* crocodylia in order to achieve their former cash income (which contradicts other evidence of plaintiff, e. g., letter of the Governor of the State of Amazonas, Brazil, complaining that the Mason Law will result in *less* crocodylia being killed).

Since plaintiff has presented us with no substantial federal question, its motion for a preliminary injunction and three-judge court are denied.

The above shall constitute the court's findings of fact and conclusions of law in accordance with Rule 52(a), F.R.Civ. P.

It is so ordered.