OPINION OF THE COURT
Aaron E. Klein, J.
This class action seeks a declaration that section 436 of the Real Property Tax Law as amended in chapter 738 of the Laws of 1978 is unconstitutional, together with related relief. The plaintiffs are comprised of individual landowners in the Town of Hardenburgh who have enjoyed real property tax exemptions during the fiscal years having taxable status dates of May 1, 1977 and May 1, 1978 pursuant to section 436. They claim to be officers of a church affiliated with the Universal Life Church, and as such are typical of other officers and landowners in the Town of Hardenburgh who own in excess of 200 parcels that were heretofore exempted by virtue of section 436. The remaining plaintiffs sue in their capacity as elected officials claiming "financial havoc” will reign if the individual plaintiffs are successful in their attack on the amended statute.
The defendants have moved this court for an order dismissing the amended complaint contending the parties asserting the cause of action lack the legal capacity to sue (CPLR 3211, subd [a], par 3), and the complaint fails to state a cause of action (CPLR 3211, subd [a], par 7). By cross motion the plaintiffs request an order granting summary judgment (CPLR 3211, subd [c]).
The threshold issue of standing must be dealt with first, though this court’s inquiry will not end with it. It has long been held in this State that "(t)he general rule of law is that a political subdivision of the State may not challenge the constitutionality of an act of the State Legislature restricting its governmental powers. * * * The attributed principle underly-
*1038 ing this well-settled doctrine has been often restated. A local government is merely a political subdivision created by the sovereign State. As such, it exercises its powers subject to the direction and control of the State” (Town of Black Brook v State of New York, 41 NY2d 486, 488 [citations omitted]). At this late date, no question can yet remain that taxation is a governmental rather than a proprietary function. (Cf. Lorillard v Town of Monroe, 11 NY 392, 394.) This court is aware of the present trend toward the softening of the rules for standing. (See Boryszewski v Brydes, 37 NY2d 361.) Yet, a court such as this one would not presume to extend standing to a municipality or subdivision thereof by judicial fiat. Thus, at this time, so far as the town officials are concerned, they lack standing, and the complaint must be dismissed. (City of Buffalo v State Bd. of Equalization & Assessment, 26 AD2d 213.)
The defendants next argue that the complaint seeks a prospective ruling and, therefore, fails to state a cause of action for lack of a justiciable issue. "Justiciable controversy” as set forth in CPLR 3001 represents a codification of prior "statements by the Court of Appeals that there is a constitutional requirement of an actual controversy between adverse parties, and that the courts are not empowered to render advisory opinions, or determine abstract, moot or academic questions.” (3 Weinstein-Korn-Miller, NY Civ Prac, par 3001.03 [footnotes omitted].) Moreover, it appears courts are often required to decide on an ad hoc basis what is justiciable taking into consideration that the primary purpose of a lawsuit is to afford the litigants the opportunity to have a controversy decided which is authentic. (Cf. New York State Assn. of Ins. Agents v Schenck, 44 AD2d 757; 3 Weinstein-Korn-Miller, NY Civ Prac, par 3001.03.)
The declaratory judgment action is, therefore, particularly well suited for the testing of the constitutionality of a statute (see Siegel, New York Practice, p 581).
Applying these considerations to the situation at bar, this court finds a justiciable controversy exists. The basis of this finding must, of course, be found in the first instance by reviewing the amendment presently challenged. Prior to adoption of chapter 738 of the Laws of 1978, section 436 provided: "Officers of religious denominations. Real property held by any officer of a religious denomination shall be entitled to the same exemption from taxation, special ad valorem levies and *1039 special assessments, subject to the same conditions and exceptions, as property owned by a religious corporation.” It now contains, in pertinent part, the following language:
"Officers of religious denominations. Real property held in trust by a clergyman or minister of a religious denomination for the benefit of the members of his incorporated or unincorporated church shall be entitled to the same exemption from taxation, special ad valorem levies and special assessments as authorized by section four hundred twenty-one of this chapter; provided that such real property shall satisfy all the conditions and exceptions set forth therein including that the property so held be used exclusively for one or more of the purposes enumerated in paragraph (a) of the subdivision one of section four hundred twenty-one of this chapter.
"For purposes of this section, 'clergyman’, 'minister’, 'incorporated church’ and 'unincorporated church’ shall be defined as in section two of the religious corporation law.”
The effect of the amendment is to require a minister or clergyman to hold property in trust for the benefit of the members of the church in order for the property, if otherwise qualified, to be entitled to an exemption.
As the individual plaintiffs apparently were granted exemptions for the two previous years, and if they do not change the manner in which they now hold the property to the form required to obtain an exemption, under the amendment, they will no longer be entitled to an exemption. They "desire to retain ownership in the manner which previously entitled their properties to exemption”. It must be assumed (since the first taxable status date has passed) the individual plaintiffs no longer enjoy an exemption. It is, therefore, clear that a presently justiciable controversy is before the court as the individual plaintiffs now confront the amendment headlong, and this court must necessarily decide the validity of the statute.
"There is a simple, but well-founded, presumption that an act of the Legislature is constitutional and this presumption can be upset only by proof persuasive beyond a reasonable doubt (Montgomery v Daniels, 38 NY2d 41; Matter of Malpica-Orsini [36 NY2d 568, 570])” (Hotel Dorset Co. v Trust for Cultural Resources of City of N. Y., 46 NY2d 358, 370). Where, as here, a court of original jurisdiction is called upon to declare a statute unconstitutional, it "should not set aside a statute as unconstitutional unless that conclusion is inescapa *1040 ble (Bohling v Corsi, 204 Misc 778, affd 306 NY 815; People v Elkin, 196 Misc 188, 193; McKinney’s Cons. Laws of N.Y., Book 1, Statutes, § 150 [1971]).” (People v Lofton, 81 Misc 2d 572, 575, affd 58 AD2d 610.)
The Court of Appeals in Hotel Dorset Co. (supra, p 370) had occasion to mention, "a further presumption, long recognized by this court, that the Legislature has investigated and found facts necessary to support the legislation (I.L.F.Y. Co. v Temporary State Housing Rent Comm., 10 NY2d 263, app dsmd 369 US 795) as well as the existence of a situation showing or indicating its need or desirability (Matter of Van Berkel v Power, 16 NY2d 37, 40).” It is against this backdrop that this court must evaluate the amendment to section 436.
The plaintiffs have provided the court with a number of exhibits collectively known as the legislative jacket. From a review of the memoranda submitted to the Governor from various government agencies and representatives, it appears that the justification for the amendment was to clarify the Legislature’s original intent in enacting the section which was to require that the minister or clergymen who holds property of an unincorporated association which seeks a tax exemption to do so in trust for the particular church.
The plaintiffs argue that the amendment will have a disproportionate effect on one religious group, the Universal Life Church; it favors other religions; therefore, it denies the individual [sic] plaintiffs equal protection of law, and violates the First Amendment of the United States Constitution as well as this State’s Constitution. It is significant to note that the amended complaint and other papers submitted by the plaintiffs make no mention of any religious prohibition against the holding of property in trust. Moreover, it appears they are merely desirous of retaining ownership in the manner previously exempted.
The United States Supreme Court has said the following about tax exemptions for religiously owned property:
"The legislative purpose of [a] property tax exemption is neither the advancement nor the inhibition of religion; it is neither sponsorship nor hostility. New York, in common with the other States, has determined that certain entities that exist in a harmonious relationship to the community at large, and that foster its 'moral or mental improvement,’ should not be inhibited in their activities by property taxation or the *1041 hazard of loss of those properties for nonpayment of taxes.
* * *
"Qualification for tax exemption is not perpetual or immutable; some tax-exempt groups lose that status when their activities take them outside the classification and new entities can come into being and qualify for exemption.” (Walz v Tax Comm., 397 US 664, 672-673.)
No question is raised about the validity of the statute prior to its amendment. Consequently, it is merely the effect of the clarification which is challenged. It is this court’s view that the statute passes the constitutional muster mentioned above. These individual plaintiffs claim no religious impediment to holding property in trust, and the legislative purpose as articulated by the sponsors was not to change any substantive rights. Walz (supra) upheld the validity of religious exemptions generally, and the statute with which this court is here concerned comports with the constitutional tests therein.
There has always been a degree of tension to be found in the First Amendment’s religion clauses, one guaranteeing free exercise and the other prohibiting the establishment. The fine line which must be drawn between the clauses can be seen by contrasting Braunfeld v Brown (366 US 599), which upholds Sunday closing as an indirect burden on one’s religious exercise, and Sherbert v Verner (374 US 398), which holds unconstitutional a requirement that a Seventh-Day Adventist be denied unemployment compensation for her failure to be available to work on Saturday. An analogy can be drawn to the Orthodox Jews who in Braunfeld must as an indirect consequence sustain an economic hardship as a result of their religious tenets because they must close business on Saturday, and according to law, on Sunday. In the situation here presented the officers, and/or ministers of the Universal Life Church must now hold property in trust for the church to enjoy an exemption from taxation though they desire otherwise.
In the absence of any allegation of specific restriction on the free exercise of the individual plaintiffs’ religious beliefs, the generally restrictive interpretation to be given real property tax exemptions (cf. Matter of Genesee Hosp. v Wagner, 47 AD2d 37, 45, affd 39 NY2d 863; see, also, Matter of American Bible Soc. v Lewisohn, 40 NY2d 78, 86) and the continual shrinkage of the tax base, this court must uphold the constitutionality of section 436 as amended.
*1042 The plaintiffs have failed to overcome the presumption of constitutionality of proof beyond a reasonable doubt. (Nettleton Co. v Diamond, 27 NY2d 182; Montgomery v Daniels, 38 NY2d 41.)
The motion is granted, the plaintiffs’ cross motion denied.