### UNITED STATES v. FULD STORE CO.

(District Court, D. Montana. January 21, 1920.)

No. 3509.

GAME ☞4—MIGRATORY BIRD TREATY ACT NOT RETROACTIVE.

Migratory Bird Treaty Act July 3, 1918, § 2 (Comp. St. Ann. Supp. 1919, § 8837b), providing that it shall be unlawful to possess, offer for sale, or sell any migratory bird included in the terms of the treaty between the United States and Great Britain of August 16, 1916, "or any part, nest, or egg of any such bird," *held* not to apply to plumage of such birds lawfully acquired before its enactment.

Information by the United States against the Fuld Store Company. Dismissed.

E. C. Day, U. S. Atty., and W. W. Patterson, Asst. U. S. Atty., both of Helena, Mont.

BOURQUIN, District Judge. The information (and exhibits of it a part) charges (1) that before the Migratory Bird Treaty Act of July 3, 1918 (40 Stat. 755 [Comp. St. Ann. Supp. 1919, §§ 8837a–8837j]), defendant owned and possessed aigrettes of heron plumage, and ·continued to own and possess them months thereafter; and (2) that months after said act defendant offered said aigrettes for sale. Defendant, without counsel and by one of its officers, answered the charge is true, and that it would "leave it to the court." A plea of guilty was tentatively entered. It is believed, however, that the information sets out no offense. Accordingly the plea is ordered withdrawn, and, as though demurred to, the information is dismissed.

The treaty (39 Stat. 1702) includes herons as migratory nongame birds,· declares for a continuous close season in their behalf, and provides for legislation to execute its purposes. The act provides "that unless and except as permitted by regulations" by it authorized to be

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

made by the Secretary of Agriculture, "it shall be unlawful to hunt, * * * kill, possess, offer for sale, sell, offer to purchase, purchase, * * * at any time or in any manner, any migratory bird included" in the treaty, "or any part, nest, or egg of any such bird." It also provides for seizure and confiscation of the things so denounced. There is no regulation purporting to apply to plumage antedating the act, and it is very doubtful if there can be.

Pretermitting whether plumage manufactured into aigrettes is "any part" of a bird within the intent of the act, or by merger and transformation into a new article has lost its identity as plumage or part of a bird, the act appears prospective, to protect birds in the future, to make killing them in the future a crime, and incidentally to make possession or offer of sale of any part of the birds unlawfully killed (that is, killed in the future) also a crime. To kill is made unlawful, and to possess or sell the fruits of such unlawful killing alone is also made unlawful. This is the most reasonable construction of the act, in view of associated words and the circumstances, and perhaps the only construction which will sanction the act's validity. Before the act, herons were lawfully killed and their plumage lawfully possessed and sold. Much of this plumage had been converted into aigrettes, artistic, beautiful, useful, and ornamental—harmless and valuable. They had entered into the domain of commerce, and the stock of private property, and were possessed by many persons. An intent on the part of Congress to virtually outlaw and destroy such property ought not to be assumed, unless very clear and the only reasonable construction of the act; for it is very doubtful if Congress has any such power.

In harmless, useful, and valuable property there is a vested right of possession, use, enjoyment, and sale—a liberty of action, of which owners cannot be arbitrarily deprived without compensation. The "due process" clause of the Constitution well may forbid. See Eberle v. Mich., 232 U. S. 706, 34 Sup. Ct. 330, 58 L. Ed. 803; U. S. v. Jin Fuey, 241 U. S. 401, 36 Sup. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854; Barbour v. State, 249 U. S. 454, 39 Sup. Ct. 316, 63 L. Ed. 704, Apr. 14, 1919; Hamilton v. Distilleries & Warehouse Co., 251 U. S. 146, 40 Sup. Ct. 106, 64 L. Ed. —, Dec. 15, 1919; Ruppert's Case, 251 U. S. 264, 40 Sup. Ct. 141, 64 L. Ed. —, Jan. 5, 1920. And it would be at least interesting to learn that the department's agents are embarked on a campaign to seize these ornaments from women's hats and hair, and how they propose to accomplish it.

Furthermore, such construction, denouncing as a crime possession and sale of this theretofore lawful private property, would expose the act to serious question as an ex post facto law within constitutional inhibition. Taking immediate effect, it would instanter convert many law-abiding citizens into criminals, change the law to their great disadvantage, and not for any act of theirs subsequent to the law, so far as possession goes, but only because they theretofore had acted and thereafter remained inactive. All this can be avoided by construction that the act relates only to birds and parts of birds killed

subsequent to the act, a permissible and more reasonable construction, and in principle always to be preferred to avoid grave doubts of the validity of the law otherwise.

True, treaties and laws to execute them may sometimes extend beyond congressional power, but, even as are acts and enactments of the war-making and all other powers, treaties and executory laws are subject to constitutional limitations. Doe v. Braden, 16 How. 657, 14 L. Ed. 1090. And the treaty is silent upon birds and parts of birds theretofore and lawfully killed and possessed. It does not require that they be regulated, and so, creates in Congress no power to deal with them. See U. S. v. Jin Fuey, supra. That in game laws it is generally provided that it is unlawful to possess game in the close season, though lawfully acquired in the open season, is not analogous. There the game is acquired subject to a known condition that to retain possession into the close season is unlawful. Note, too, such laws have not been construed to include possession of stuffed game, mounted heads, ornaments, and the like.

That some incidental advantage in administration of the law would accrue from a construction that it applies to birds and parts of birds killed before its date avails nothing, in the face of the language of the act, of the settled principles of construction, and of the strong and controlling reasons otherwise.