## In re INFORMATIONS UNDER MIGRATORY BIRD TREATY ACT.

(District Court, D. Montana. June 22, 1922.)

1. **Indictment and information ⬷40—Grounds for granting leave to file information.**

   If an information (1) is sufficient on its face, (2) is supported by evidence that it is probable the offense has been committed and by accused, and (3) is of an offense of magnitude to require prosecution in the interest of society, leave to file will be granted; otherwise, not.

2. **Game ⬷9—Information for illegal possession of migratory bird held insufficient.**

   An information charging defendants with possessing and offering for sale "one mounted specimen of wild duck without being permitted so to do by any regulation made," *held* not to charge an offense under Migratory Bird Treaty Act, § 2 (Comp. St. Ann. Supp. 1919, § 8837b), where it was not alleged that such bird was taken subsequent to passage of the act.

---

⬷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Game** ⬤⟶7—**Expressed willingness to sell bird specimen not "offer for sale."**

    An expressed willingness to sell a mounted specimen of migratory bird *held* not an "offer for sale," within Migratory Bird Treaty Act, § 2 (Comp. St. Ann. Supp. 1919, § 8837b).

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Offer for Sale.]

4. **Game** ⬤⟶4—**Migratory Bird Treaty Act not applicable to birds taken before its passage.**

    Migratory Bird Treaty Act (Comp. St. Ann. Supp. 1919, §§ 8837a–8837m), and regulations made thereunder relate to birds taken thereafter and do not apply to subsequent transactions in lawful property in birds taken before passage of the act.

5. **Game** ⬤⟶9—**Information for illegal purchase and sale of game birds held insufficient.**

    Under a regulation made pursuant to Migratory Bird Treaty Act (Comp. St. Ann. Supp. 1919, §§ 8837a–8837m), authorizing issuance of permits for purchase and sale, an information charging illegal purchases and sales should negative possession of a permit by defendant.

6. **Game** ⬤⟶7—**Regulation permitting hunting "to sunset" to be given fair and practical construction.**

    A regulation adopted under Migratory Bird Treaty Act (Comp. St. Ann. Supp. 1919, §§ 8837a–8837m), permitting hunting "to sunset," should be given a fair and practical construction, and *held* to mean the time when, in the circumstances and in the honest judgment, from observation of the hunter or from the best information available to him, sunset occurs.

    [Ed. Note.—For other definitions, see Words and Phrases, Sunset.]

7. **Game** ⬤⟶9—**Prosecutions for trivial infractions of federal game regulations not commendable.**

    Prosecutions in the United States District Courts for trivial and often unintentional infractions of regulations made under the Migratory Bird Treaty Act (Comp. St. Ann. Supp. 1919, §§ 8837a–8837m) are derogatory to the court and do not tend to enhance respect for the law, and where, as in general, the acts charged are also violations of state laws, should be prosecuted, if at all, under such laws in justice court.

In the matter of applications for leave to file informations under the Migratory Bird Treaty Act. Denied.

John L. Slattery, U. S. Atty., of Helena, Mont.

BOURQUIN, District Judge. Ordinarily applications to file informations are granted as of course, but these invoking the Migratory Bird Treaty Act (Comp. St. Ann. Supp. 1919, §§ 8837a–8837m) recollections of the "helldiver" case mentioned in the Yellowstone Bank Case (D. C.) 277 Fed. 71, and semi-apologetic manner of counsel, inspire scrutiny concerning propriety of the proposed prosecutions. In justice to counsel these are of that anomalous class of cases wherein, not the Department of Justice, but some bureau or other, is authorized to investigate and direct prosecutions, wherein counsel has no discretion, but obeys orders (probably some bureau clerk's) from Washington, in this respect the repository of all power, if not of wisdom in equal degree, and by reason of which counsel is often constrained to prosecute against his better judgment, and to deserved failure.

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] Of the law, it suffices to say that, if an information (1) is sufficient on its face, (2) is supported by evidence that it is probable the offense has been committed and by accused, and (3) is of an offense of magnitude to require prosecution in the interest of society, leave to file will be granted; otherwise, not. See U. S. v. Quaritius (D. C.) 267 Fed. 229; U. S. v. Smith (C. C.) 40 Fed. 756. From the papers tendered it appears Sharp et ux. are alleged to have (1) possessed and (2) offered for sale in January, 1921, "one mounted specimen of wild duck, without being permitted so to do by any regulation made," and the evidence is that in a curio shop owned by some one of defendants a federal game warden saw the duck or skin, and from Sharp secured an expression of willingness to sell it.

[2] Aside from the triviality of the charge and the probable non-culpability of the wife in common-law principle, the charge of possession fails, in that it is not alleged possession was of a duck illegally taken and acquired subsequent to the Treaty Act, none others being within the act. See Fuld's Case, 262 Fed. 837; Regulation No. 9.

[3] The charge of offer for sale is not supported by evidence of willingness to sell, willingness not being an offer within the meaning of the term and as used in the act. This application is denied.

In the matter of Jonas, it is alleged that in October, 1920, he sold "three ducks, one rail, and one sora, migratory game birds," and that in November, 1921, he purchased one loon, all "without being permitted so to do by any regulation made." The evidence is that Jonas, a taxidermist, sold three mounted ducks, and for mounting for hire received and retained for a few days, until it spoiled and was thrown away, one loon in the flesh. In respect to the sale, the charge fails for like reasons to those defeating the charge of possession in Sharp's case aforesaid.

[4] The Treaty Act and the regulations relate to birds illegally taken thereafter, and do not expressly apply to subsequent transactions in the matter of lawful property in birds taken theretofore. Perhaps the latter could be reasonably regulated by statute, if not by administrative rule, to make effective regulation of the former. See Ruppert's Case, 251 U. S. 290, 40 Sup. Ct. 141, 64 L. Ed. 260. But it must be by language clear and definite before men will be criminally liable for failure to comply. They cannot be punished until it plainly and unmistakably appears that their case is within the letter and spirit of the statute. See U. S. v. Weitzel, 246 U. S. 543, 38 Sup. Ct. 381, 62 L. Ed. 872; U. S. v. Brewer, 139 U. S. 288, 11 Sup. Ct. 538, 35 L. Ed. 190; U. S. v. Herrig (D. C.) 204 Fed. 125. In respect to the alleged purchase, there is no evidence.

[5] Furthermore, since there is a regulation (No. 9) authorizing sale and purchase upon permits, if these transactions are without such permits, good pleading requires it shall be so alleged, "contrary to the regulation made," etc. The requested leave is denied.

In the matter of the separate informations against Miles, Engel, and Hendrickson, it is alleged that in November, 1921, and after sunset, they severally hunted wild ducks, contrary to the regulation. The

evidence is that at a place frequented by wild ducks a federal game warden saw a dog happen upon and chase a wounded wild duck; Miles going to the dog's assistance, the duck escaping; that Engel approached from the direction of shooting; that both had guns, no game as far as appears, and said that they had been looking for wild geese; that a few days before in the same locality the warden saw Hendrickson fruitlessly fire one shot at three wild ducks in overhead flight; that all these incidents occurred 30 to 50 minutes after sunset, as estimated by the warden by aid of two watches, mountain standard and railway time, United States Weather Bureau tables, and a map. It is probable all this was after solar sunset, and perhaps to the knowledge of the average hunter not so well equipped with instrumentalities of measurement. The regulation (No. 4) permits hunting "to sunset."

[6] In behalf of the average hunter, in a spirit of fairness and practicality, to serve the object of protection to birds as they settle for repose in darkness, and to escape otherwise unavoidable and inadvertent violations of the regulation, it is believed "to sunset" means, not the moment of solar sunset, which can be determined nohow and nowhere, save by scientific calculations in a few great observatories, but means the time when, in the circumstances and in the honest judgment from observation of the hunter, or from the best information available to him, it appears that sunset occurs. Otherwise, "to sunset" is absolutely indeterminable as a practical matter in the field, and otherwise there will be an intolerable number of accidental offenses by conscientious and law-abiding sportsmen. And this construction of the term has been upheld, even in respect to its meaning in a Constitution. See People v. Bishop, 111 Ill. 124, 53 Am. Rep. 605. Be that as it may, however, if it be assumed that the evidence would justify conviction in any of these three informations, each and all of them are too trivial to warrant setting in motion the elaborate and ponderous machinery of this federal court to try them. If they and their like of great variety are to be prosecuted, every consideration of time, economy, procedure, policy, and justice demands the creation of federal police courts or commissioners, as now in the great national parks, to that end.

[7] It is derogatory to the District Courts and their administration of justice, is poor public policy to congest them with a multitude of petty matters of police, and because of it exists a situation deplorable from every angle, not to be relieved by omnibus bills multiplying District Judges, peripatetic or otherwise, but only by the method above suggested and which eventually will be adopted. These informations are of the "helldiver" category, the prosecution of which serves not to administer a meritorious law and to further the interests of society, but tends to contempt for the former and to prejudice to the latter. So far as their prosecution herein is concerned, the law is more honored in the breach than in the observance. It is their like that was in the mind of Bishop when he wrote that the prosecutor "who knows his business" ordinarily will ignore them. The reason is they are more or less unintentional and trifling infractions of statutory regula-

tions; that these latter, federal, state, county, city, and town, are so near infinite that no person but on occasion violates some of them; that it is not to the interest of society that every person be prosecuted and reduced to the status of convicts, even were there jails enough for all; and that "de minimis non curat lex" operates in the field of criminal as of civil law.

It is noteworthy that diligent wardens detect no more serious violations of this Treaty Act. Apparently the people are, as they should be, well disposed to it and to state game laws in general. In fact, violation of the former is generally also of the latter; and it is better policy, federal and state, that the charge be laid by virtue of the latter only and before the nearest justice of the peace. In the absence of serious offenses, the prosecution of the trivial is not necessary to justify and perpetuate the offices of wardens, necessary as they are in any event. Even as the others, to file these informations leave is denied.