[Civ. No. 43864. Second Dist., Div. Four. Feb. 11, 1975.]

AZUSA WESTERN, INC., Plaintiff and Respondent, v.
CITY OF WEST COVINA, Defendant and Appellant.

**COUNSEL**

George W. Wakefield, City Attorney, and Burke, Williams & Sorensen for Defendant and Appellant.

Wiener, Newman, Chrisman & Baldonado and J. Randall Faith for Plaintiff and Respondent.

**OPINION**

**COLE, J.\***—The City of West Covina, defendant and appellant here,

*Assigned by the Chairman of the Judicial Council.

awarded a bid to L. C. Construction Co., Inc. for street improvements under the Improvement Act of 1911 (Sts. & Hy. Code, § 5000 et seq.).[1]

United Bonding Insurance Company, a qualified corporate surety, executed the statutory (§ 5290) labor and materialmen's bond. Thereafter, L. C. Construction Co., Inc. commenced work on the project. Plaintiff and respondent Azusa Western, Inc. furnished labor and material to the contractor.

Not having been paid, plaintiff delivered a verified notice to withhold (§ 5292) making a claim for unpaid sums due it from L. C. Construction Co., Inc. on account of the labor and material furnished.

Thereafter, the same bonding company as surety for L. C. Construction Co., Inc., and pursuant to permission of defendant city, filed a release bond (§ 5295) with the city, and the latter delivered monies withheld by it to the contractor.

This action was thereafter filed. Plaintiff was unable to collect further sums from the construction company and the surety itself underwent a liquidation proceeding. The trial court entered judgment for the plaintiff in the sum of $17,218.94, the agreed unpaid amount. The trial court concluded that the city was liable to plaintiff because it failed to comply with sections 5295 and 5296 by permitting the release bond to be written by the same bonding company as wrote the labor and materialmen's bond.

■  The principal question on this appeal is the correctness of that determination. We affirm the judgment.

Section 5295 provides: "If any contractor disputes the correctness or validity of any claim filed pursuant to this chapter, the city or superintendent of streets may permit the contractor to deliver to the city or superintendent of streets a bond satisfactory to said city or superintendent of streets executed by the contractor and some corporation authorized to issue surety bonds in a penal sum equal to one and one-fourth times the amount of the claim."

Section 5296 states: "The bond shall guarantee the payment of any sum which the claimant may recover on the claim together with his costs

---

[1]All statutory references hereafter, unless otherwise noted, are to the Streets and Highways Code.

of suit in the action, if he shall recover therein. If such bond is filed, the city, any officer thereof, or superintendent of streets shall not withhold any moneys or funds, assessment, partial assessment, any reassessment and any bonds which may be issued to represent any assessment or reassessment from the contractor on account of the claim. *The sureties upon the bond shall be jointly and severally liable to the claimant with the sureties upon the contractor's original labor and material bond posted by the contractor.*" (Italics supplied.)

We agree with the trial court's determination that the language we have emphasized in section 5296 must be taken to mean that the surety on any release bond furnished pursuant to section 5295 must be a different surety than the surety on the labor and materialmen's bond furnished under section 5290. The language of the statute admits of no other reasonable interpretation unless some of its provisions are. to be disregarded. The statute refers to two classes of sureties—*"The sureties upon the [release] bond shall be jointly and severally liable to the claimant with the sureties upon the contractor's original labor and material bond* posted by the contractor."[2] (Italics supplied.)

It is an elementary rule of statutory construction that all parts of a statute should be effectuated and given meaning. " 'A cardinal rule of construction is that . . . a construction making some words surplusage is to be avoided.' " (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 480 [82 Cal.Rptr. 724, 462 P.2d 580], quoting from *Watkins* v. *Real Estate Commissioner* (1960) 182 Cal.App.2d 397, 400 [6 Cal.Rptr. 191].)

Code of Civil Procedure, section 1858, states that: ". . . where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all."

It is obviously impossible for the release bond surety to be jointly and severally liable with itself, which would be the result if the same surety could write both the release bond and the labor and materialmen's bond required in the statutes. (See, Marsh, Cal. Mechanics Lien Law Handbook (2d ed.) p. 180; see also, Cal. Mechanics Liens and Other Remedies (Cal. Practice Book, No. 58) pp. 275-276.)

Emphasizing that section 5295 provides that the surety on the release bond shall be "some corporation" authorized to issue surety bonds and

---

[2]Civil Code, section 3196, dealing with public works of improvement other than streets and highways provides for a release bond and likewise states that the surety upon such bond is jointly and severally liable with the surety upon any payment bond.

that United Bonding Insurance Company was such a corporation, the city argues that the trial court rewrote the statute to add an additional provision. It contends that the effect of the "jointly and severally liable" provision of section 5296 is merely to give a claimant in plaintiff's position recourse to either the release bond or the labor and material bond. It is true that this is one effect of the statute. But it is also true that to limit the statute to this result would be to ignore the fact that the language clearly refers to two separate sets of sureties. As we have already indicated, we cannot ignore this in construing the statute. The construction urged by the city would violate this precept, and we, therefore, reject it.

■ The city also argues that it can have no liability to the materialman or labor supplier because of the provisions of section 5285.[3] The argument is misplaced. The section makes it clear that the city is not liable *to the contractor* performing the street work for the cost of the improvement. This is because such costs are payable by the property owners benefited by the work, who are assessed for that cost (§§ 5180, 5360 et seq., 5390 et seq.). Section 5285 does not exonerate the city from liability when its failure to follow the statutory scheme deprives a claimant of its lien rights in the funds improperly released. (*United States Fid. & Guar. Co.* v. *Oak Grove Union School Dist.* (1962) 205 Cal.App.2d 226 [22 Cal.Rptr. 907].) *Oak Grove* was a case where a school district paid out funds to a contractor, in disregard of stop notices from claimants who had furnished labor and materials. It was held there that the contractor's surety, who paid off these claimants, was subrogated to their rights against the school district.

*Adamson* v. *Paonessa* (1919) 180 Cal. 157 [179 P. 880], relied upon by the city is not in point. Language in that case indicating that the Improvement Act of 1911 gave no lien rights to claimants and had no provision authorizing or permitting a municipality to retain funds due to a contractor was an accurate statement at the time of the decision. But the Improvement Act of 1911 was amended after the decision in *Adamson* to provide for lien rights (Stats., 1919, ch. 297, § 1). The provisions concerning release bonds were not adopted until 1927 (Stats., 1927, ch. 388, § 1).

■ The city's final argument is that the theory on which this action was tried was outside the scope of the first amended complaint.

[3]Section 5285: "The contract shall contain express notice that, in no case, except where it is otherwise provided by law or by charter will the city, or any officer thereof, be liable for any portion of the expense, nor for any delinquency of persons or property assessed."

Assuming, without deciding, that such was the case, nevertheless the matter was completely argued below on the very theory upon which it was decided. The parties stipulated that the issue of liability be bifurcated from the issue of damages. The court so ordered, further stating: ". . . The issue of liability is to be submitted on written pleadings. Each side is to have 20 days to prepare the pleadings. . . ."[4] Thereafter, each side filed trial briefs.

Plaintiff argued that the sole issue to be resolved was the city's failure to comply with sections 5295 and 5296 because the surety accepted on the release bond was the same surety as that on the labor and materials bonds. The city argued its contention that it had no duty to require a different surety. In the context of this argument, directed to the merits of plaintiff's claim, the city mentioned in one sentence that the complaint contained no allegation to support the claim that two sureties were required. It then proceeded to present its substantive reasons why, in its view, the plaintiff's position was not well taken. The case was submitted on the basis of the briefs and, presumably, oral argument. No evidence was introduced.

Under these circumstances the city may not now claim that the pleadings were insufficient to raise the issue. No objection to its hearing the issue was presented to the trial court. (6 Witkin, Cal. Procedure (2d ed. 1971) p. 4271 and cases cited.) Assuming, without deciding, that there was a variance, the fact that the point was fully and completely argued, without the production of evidence could not have placed the city at any disadvantage. (*Gray* v. *The Janss Investment Co.* (1921) 186 Cal. 634, 641 [200 P. 401].)

■ For the first time at oral argument, the city raised the contention that the stop notice provisions of the Improvement Act of 1911 (§§ 5292 and 5293) are unconstitutional under principles enunciated in cases such as *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820] and *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13]. The contention was followed by letter briefs which we allowed to be filed. Assuming that the city has not waived the question by failing to raise it at the earliest possible moment (*e.g., Hershey* v. *Reclamation District No. 108* (1927) 200 Cal. 550, 564 [254 P. 542]) we agree with plaintiff that the city has no standing to raise the issue. As the city argues with respect to *Sniadach* and *Randone,* "The

[4]If the word "pleadings" is taken literally then the record on appeal is insufficient to support the city's claim because the additional pleadings do not appear in the clerk's transcript.

underlying principle of the cases is that an individual must be afforded notice and an opportunity for a hearing before he is deprived of any significant property interest." The constitutional challenge made by the city is that the *contractor's* rights are unconstitutionally impinged upon by sections 5292 and 5293. "It is a firmly established principle of law that one may not urge the unconstitutionality of a statute unless his rights are adversely affected thereby . . . ." (*County of Ventura* v. *So. Cal. Edison Co.* (1948) 85 Cal.App.2d 529, 539 [193 P.2d 512].) Sections 5292 and 5293 have not operated to deprive the city of any constitutional rights. (*People* v. *Walton* (1945) 70 Cal.App.2d Supp. 862, 865-866 [161 P.2d 498].) If the claims of constitutionality have any substantive merit, a matter which we do not determine, they will have to be raised by one in the position of L. C. Construction Co., Inc., the contractor herein. (*People* v. *Perry* (1931) 212 Cal. 186, 193 [298 P. 19, 76 A.L.R. 1331].)

The judgment is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.