**UNITED STATES of America,
Plaintiff,**

v.

**L. Doug ALLARD, Defendant.
No. CR 75–6–M.**

United States District Court,
D. Montana,
Missoula Division.

July 21, 1975.

---

Robert Zimmerman, Asst. U. S. Atty., Billings, Mont., for plaintiff.

Harold J. Pinsoneault, Missoula, Mont., for defendant.

## OPINION AND ORDER

RUSSELL E. SMITH, Chief Judge.

Defendant was found guilty by a jury of Counts I and III of an information charging him with selling golden eagle feathers in violation of 16 U.S.C. § 668(a).

A motion in arrest of judgment and a motion for a new trial raise problems relating to the laws protecting bald and golden eagles and the effect of those laws on reservation Indians.

Defendant urges that, as a member of the Confederated Salish and Kootenai Tribes of the Flathead Reservation, he has rights under the Treaty of Hell Gate of 1855, 12 Stat. 975, which preclude the United States from maintaining this action. The treaty provision is:

> The exclusive right of taking fish in all the streams running through or bordering said reservation is further secured to said Indians; as also the right of taking fish at all usual and accustomed places, in common with citizens of the Territory, and of erect-

ing temporary buildings for curing; together with the privilege of hunting, gathering roots and berries, and pasturing their horses and cattle upon open and unclaimed land.

—Act of July 16, 1855, 12 Stat. 975, 976.

For two reasons the treaty does not benefit the defendant here.

First: The eagle feathers which were the subject of the indictment were part of the eagle feather bonnets which were purchased by the defendant. They were not the product of defendant's hunting, nor is it suggested that they were taken by any person having rights under the Hell Gate Treaty and are for that reason somehow entitled to special treatment.

■ Second: If this case should involve treaty hunting rights, those rights as to eagles were abrogated by Pub.L. No. 87–884, 76 Stat. 1246 (1962). This conclusion is contrary to that reached by the majority in *United States v. White*, 508 F.2d 453 (8th Cir. 1974), and in accord with that reached by Judge Lay in his dissenting opinion. In support of the position here taken there is little that can be added to that opinion. It demonstrates that Congress (by making special provisions for Indian permits to take bald and golden eagles) did have Indians in mind; that Congress was gravely concerned with the threat that these magnificent birds might disappear from North America; and that it intended the prohibition to apply to all persons regardless of treaties.

■ Defendant claims a denial of due process in that 16 U.S.C. § 668(a), by depriving him of the right to sell eagle feathers, diminishes the bundle of rights to which his ownership of the feathers entitles him. It is unnecessary to decide what the result might be had defend-

ant's ownership of them antedated the year 1962,[1] because the evidence here shows that the feathers in question were acquired sometime after the enactment of the law making the sale of feathers illegal.[2] Congress had undoubted power [3] to protect the golden eagle and could forbid commerce in its feathers. If, at the time defendant acquired the feathers, the rights of his predecessor in title were violated because some property right was taken without due process, plaintiff is not in a position to complain. If the cases cited in footnote 1 are contrary, then I refuse to follow them.

At the trial, the court, acting in reliance on *Cohen v. United States*, 378 F. 2d 751 (9th Cir. 1967), instructed the jury that it was necessary that the jury find that the defendant knew that the sale of eagle feathers was illegal. If this instruction was correct, then the court's order, denying an offer to prove by the witness Ward that in the Indian artifact business it was the usage and custom to sell eagle feather bonnets and that it was unknown in the industry that such sales were illegal, was erroneous. The witness was well-qualified to state the custom in the trade, and the evidence, if given, would have corroborated defendant's claim that he had no knowledge of the law. Hence, if the instruction was correct, the court committed error in rejecting the evidence. On a further consideration of the matter, I conclude that the instruction should not have been given.

16 U.S.C. § 668(a) reads in pertinent part:

> Whoever . . . shall knowingly, or with wanton disregard for the consequences of his act . . . sell . . . any golden eagle . . . or any part . . ..

---

1. *See United States v. Marks*, 4 F.2d 420 (S.D.Tex.1925); *In re Informations Under Migratory Bird Treat Act*, 281 F. 546 (D. Mont.1922); *United States v. Fuld Store Co.*, 262 F. 836 (D.Mont.1920).

2. The evidence warrants a finding that these feathers were taken from eagles killed prior to 1962.

3. *See Palladio, Inc. v. Diamond*, 321 F.Supp. 630 (S.D.N.Y.1970), *aff'd*, 440 F.2d 1319 (2d Cir. 1971), *cert. denied*, 404 U.S. 983, 92 S. Ct. 446, 30 L.Ed.2d 367 (1971).

The effect of the word "knowingly" is to require that the Government prove that the defendant knew that the feathers were golden eagle feathers, and I think it clear that a conviction would not be had were a person to sell golden eagle feathers thinking them to be turkey feathers. The motions here posed no problems in this regard. The Act does not, and no statute that I recall seeing, makes the defendant's knowledge of the law an element of the crime.

I find nothing in 16 U.S.C. § 668(a) which sheds much light upon the congressional intent, and the legislative history tells me no more than that Congress was greatly concerned about the preservation of the bald and golden eagles and was anxious to do something about it.

■ The rule of general application seems to be that in "regulatory measures . . . where the emphasis of the statute is evidently upon . . . social betterment rather than the punishment of the crimes as in cases of *mala in se* . . ." a specific intent is not required. In this area the axiom that ignorance of the law is no excuse seems to be true. *United States v. Balint*, 258 U.S. 250, 252, 42 S.Ct. 301, 66 L.Ed. 604 (1922).[4] In *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), the Court distinguished between knowledge of law and fact and said at 270–71, 72 S.Ct. at 254:

. . . But knowing conversion requires more than knowledge that defendant was taking the property into his possession. He must have had knowledge of the facts, though not necessarily the law, that made the taking a conversion.

Congressional silence may lead to differing inferences:

. . . Congressional silence as to mental elements in an Act merely adopting into federal statutory law a concept of crime already so well defined in common law and statutory interpretation by the states may warrant quite contrary inferences than the same silence in creating an offense new to general law, for whose definition the courts have no guidance except the Act. Because the offenses before this Court in the *Balint* and *Behrman* cases were of this latter class, we cannot accept them as authority for eliminating intent from offenses incorporated from the common law.
—*Morissette v. United States, supra*, 262, 72 S.Ct. 249.

In *Cohen, supra*, the court apparently, from the penalty involved and from the fact that the crime occurred in Nevada where the act would be free of culpability except for the statute, found a congressional intent that knowledge of the law was an element of the crime.

■■ When the Act of June 8, 1940, 54 Stat. 250, was enacted to protect the bald eagle, the penalties were $500.00 and six months imprisonment. The Act of October 24, 1962, 76 Stat. 1246, added the golden eagle to the protected list and left the punishment provisions unchanged. The present rather severe penalties of one year imprisonment and $5,000.00 for a first offense, provided by the Act of October 23, 1972, 86 Stat. 1064, were the result of reaction to the widespread publicity given acts of wanton destruction—the wholesale killing of eagles. In light of this history, I do not think that the penalty indicates a congressional intent to make knowledge of the law an element of the crime. The fact is that in protection of wildlife hosts of laws have been enacted and seldom if ever is intent made an element of the offense. Since the law is regulatory, since the penalties initially were moderate, since the crime at the first offense level is still a misdemeanor, since the

---

4. In *Balint* the Court held that neither knowledge of the fact or of the statute was an element of the drug-related crimes there involved, saying 258 U.S. at 254, 42 S.Ct. at 303: ". . . Its manifest purpose is to require every person dealing in drugs to ascertain at his peril whether that which he sells comes within the inhibition of the statute, and if he sells the inhibited drug in ignorance of its character, to penalize him."

taking of wildlife is traditionally regulated by laws not requiring specific intent, I am unable to find a congressional intent that knowledge of the law is an element of the offense. That being so, the exclusion of the evidence of custom was proper. Though the giving of the instruction was error, it was favorable to the defendant and he cannot now complain.

I have considered the other alleged errors and find them without merit.

The motion in arrest of judgment and the motion for a new trial are denied.