[Civ. No. 37226. First Dist., Div. Three. Mar. 25, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
K. SAKAI CO. et al., Defendants and Appellants.

532

**COUNSEL**

Wayne M. Collins for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg and Jamie Jacobs-May, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GOOD, J.**\*—The District Attorney of San Francisco filed an action on behalf of the public under Civil Code section 3369 against the corporate owner and operators of a grocery store in a predominantly Japanese quarter of San Francisco to enjoin the sale of canned whale meat in violation of Penal Code sections 653o and 653r. Section 653o, originally

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

enacted in 1970 and operative December 1, 1970, made it unlawful to import into the state for commercial purposes, or to possess with intent to sell, or to sell the dead body or any part or product thereof of named endangered species of animals and amphibians. It did not then apply to a product imported prior to December 1, 1970, and did not include whales in the named species. In 1971 the said section was amended to include whales, and section 653r was added. The new section made it a misdemeanor to possess with intent to sell, or to sell "after June 1, 1972, the dead body, or any part or product thereof, of any fish, bird, amphibian, reptile, or mammal specified in Section 653o or 653p." Such possession or sale of whales (or other species named), regardless of the date of importation, became a misdemeanor.

In December of 1970, the Oriental Trading Company of Los Angeles imported canned whale meat into the United States. This was not unlawful at the time. On May 14, 1973, the Sakais purchased several cases thereof. In response to a consumer's complaint, San Francisco Police Inspectors Ahlgrim and Simms went to the Sakai grocery on November 2, 1973, saw some of the cans on display and purchased one. On November 14, an assistant district attorney wrote to the Sakais to notify them of the complaint and inform them of the illegality of possession or sale of whale meat. A few weeks later, Simms returned and did not find the whale meat where it had been displayed on his previous visit. He asked an employee if he had such for sale. The employee could not locate any but elicited the aid of a fellow employee who produced a box, and Simms bought two cans therefrom. The Sakais claimed that after they received the district attorney's letter of November 14, they removed the cans from their display shelves and placed them in a carton with a note that the contents were not to be sold—a note that was never found. On December 14, Simms returned with a search warrant and seized 10 cases of whale meat from a basement storeroom and another carton containing cans thereof that was found on the floor of an aisle in the grocery store.

The case was tried without a jury. Judgment was entered on February 20, 1975, wherein the Sakais were enjoined from selling or possessing with intent to sell whale meat or other food or products in violation of Penal Code sections 653o-653r.[1] The court assessed a civil penalty of

---

[1]The endangered species named in section 653o, as originally enacted, were: "alligator, crocodile, polar bear, leopard, ocelot, tiger, cheetah, jaguar, red wolf, timber wolf, vicuna, sea otter, free roaming feral horse, or Spanish lynx." The 1971 amendment thereto included "whale" and added section 653r (Stats. 1971, ch. 1283, §§ 1, 2), which

$2,000 (Civ. Code, § 3370.1). This appeal by the Sakais (appellants, *post*) is upon an agreed statement (Cal. Rules of Court, rule 6(a)) in which the prosecution (respondent, *post*) joined. The following issue is raised: Are Penal Code sections 653o and 653r unconstitutional under the facts of this case either (a) as an unreasonable exercise of the police power or (b) as a deprivation of property without due process?

 Appellants contend that said sections, insofar as they proscribe the sale of products *lawfully* imported, constitute an unreasonable exercise of the police power. For the following reasons we do not agree.

The police power has long been described as the inherent power of a body politic to enact and enforce laws for the promotion of the general welfare. (Cf. 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 435, p. 3734, and cases there cited.) It has been said that an "attempt to define its reach or trace its outer limits is fruitless." (*Berman* v. *Parker* (1954) 348 U.S. 26, 32 [99 L.Ed. 27, 37, 75 S.Ct. 98].) The scope of the police power changes with changing social and economic conditions. It is "not a circumscribed prerogative, [2] but is elastic and . . . capable of expansion to meet existing conditions of modern life and thereby keep pace with the social, economic, moral, and intellectual evolution of the human race. In brief, 'there is nothing known to the law that keeps more in step with human progress than does the exercise of this power,' [citation] and that power 'may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare.' [Citations.]" (*Miller* v. *Board of Public Works* (1925) 195 Cal. 477, 485 [234 P. 381, 38 A.L.R. 1479].)

The science of ecology is no longer an esoteric branch of biology concerned only with the mutual relationships between environment and plant and feral animal organisms. It has also acquired a specific sociological significance. (Cf. Webster's Third New Internat. Dict.) In *Palladio, Inc.* v. *Diamond* (S.D.N.Y. 1970) 321 F.Supp. 630, 631, affd. 440 F.2d 1319, cert. den., 404 U.S. 983 [30 L.Ed.2d 367, 92 S.Ct. 446], the court states: "It is now generally recognized that the destruction or

---

incorporated both 653o and 653p which embraces any parts of or products derived from any species or subspecies of any fish, bird, mammal, amphibian or reptile, the importation of which is illegal and which is listed in the Federal Register by the Secretary of the Interior pursuant to the Endangered Species Conservation Act of 1969 (Pub. L. No. 91-135, 83 Stat. 275).

[2]It is, of course, circumscribed by basic constitutional limitations and guarantees.

disturbance of vital life cycles or of the balance of a species of wildlife, even though initiated in one part of the world, may have a profound effect upon the health and welfare of people in other distant parts. We have come to appreciate the interdependence of different forms of life. We realize that by killing certain species in one area we may sound our own death knell. [¶] For these reasons ecology has become everyone's business. Like pollution it does not cease to be of vital concern merely because the problem is created at a distant point."

The aims of the Endangered Species Act of 1969 were amplified by the Federal Endangered Species Act of 1973, which created a program for the protection of species of wildlife threatened with world-wide extinction, and encouraged the states to develop and maintain similar programs as a means of "safeguarding, *for the benefit of all citizens,* the Nation's heritage in fish and wildlife." (16 U.S.C. § 1531, italics supplied.) In view of the interests involved and the tenor of recent federal and state legislation, it cannot be argued that the protection of endangered species of wildlife is not within the ambit of the police power as a matter of general concern and in the interests of the public. (*Adams* v. *Shannon* (1970) 7 Cal.App.3d 427, 432 [86 Cal.Rptr. 641]; *A. E. Nettleton Co.* v. *Diamond* (1970) 27 N.Y.2d 182 [315 N.Y.S.2d 625, 264 N.E.2d 118, 124].)

Relying on *A. E. Nettleton Co.* v. *Diamond,* appellants reason that prohibiting the sale of products imported prior to the effective date of section 653r (i.e., June 1, 1972) does not effectuate the general purpose of the statute because protection cannot be afforded to an animal already killed and processed. This argument is not persuasive.

■ Once the state has determined to regulate a matter which is within its police power, "its authority over the subject is plenary and can be reviewed by the courts only to the extent of determining whether the regulation is reasonable." (*Sandstrom* v. *Cal. Horse Racing Board* (1948) 31 Cal.2d 401, 407-408 [189 P.2d 17, 3 A.L.R.2d 90].) ■ When the police power is exercised to protect natural balances in the environment, the test of legislation enacted thereunder is whether there is any reasonable basis from which the Legislature could determine that the regulations it enacts are "necessary or desirable for its intended purpose." (*Adams* v. *Shannon, supra,* 7 Cal.App.3d at p. 433.)

The purpose of Penal Code sections 653o-653r is to prevent the extinction of endangered species. To effectuate this purpose, the

Legislature has determined that elimination of a market for products derived from these species will promote their continued existence. The ban on the sale of all whale products, including those imported prior to the effective date of the legislation, at least decreases the market therefor. As respondent points out, products derived from whales killed before the effective date of the legislation are indistinguishable from those produced thereafter. Consequently, once a shipment of whale products has entered the stream of commerce in California, there is no means of demonstrating when it arrived other than to ask those who have the right to remain silent on the subject. Furthermore, if consumers were able to purchase whale products imported before a certain date, they would continue to seek out such products, and the demand would create an incentive for merchants to act in violation of the law after the exhaustion of the legally imported supply. (See *A. E. Nettleton Co.* v. *Diamond, supra,* 264 N.E.2d 118, 124-125.) American ingenuity and experience in the bootlegging and black-marketing of products that are banned from sale cannot be ignored. For these reasons, it is concluded that a rational basis exists for the legislation, and that Penal Code sections 653o-653r constitute a reasonable exercise of the police power.

It is further argued that the application of section 653o to whale products imported prior to June 1, 1972, divests appellants of a vested property right in violation of due process of law. As noted, the whale meat in question was legally imported in 1970. The provision under attack became operative June 1, 1972. (Pen. Code, § 653r.) But appellants did not purchase the whale meat until May 14, 1973. Since appellants' property rights came into existence well after the enactment of the statute, the legislation cannot be said to have any retrospective application as to those rights. *United States* v. *Allard* (D.Mont. 1975) 397 F.Supp. 429, involved a sale of feathers taken from golden eagles killed prior to the 1962 effective date of legislation which made such sales unlawful. The defendant did not acquire them until after the law's enactment. He claimed a denial of due process in that the statute, by depriving him of the right to sell the eagle feathers, diminished the bundle of rights to which his ownership of the feathers entitled him. This argument was rejected by the court, as follows: "Congress had undoubted power to protect the golden eagle and could forbid commerce in its feathers. If, at the time defendant acquired the feathers, the rights of his predecessor in title were violated because some property right was taken without due process, plaintiff is not in a position to complain." (397 F.Supp. at p. 431; see also *Ex parte Hadacheck* (1913) 165 Cal. 416,

420-421 [132 P. 584]; *Estate of Childs* (1941) 18 Cal.2d 237, 244, 246 [115 P.2d 432, 136 A.L.R. 333]; *Azusa Western, Inc.* v. *City of West Covina* (1975) 45 Cal.App.3d 259, 265-266 [119 Cal.Rptr. 434].)

Further, if the instant legislation were deemed to impair any vested property rights of appellants, it would not necessarily be rendered unconstitutional. As to this principle, the California Supreme Court adopted the language of Professor Armstrong in a 1945 article in 33 Cal.L.Rev. 476, 495-496, that involved quasi-community property legislation: "Vested rights, of course, may be impaired 'with due process of law' under many circumstances. The state's inherent sovereign power includes the so called 'police power' right to interfere with vested property rights whenever reasonably necessary to the protection of the health, safety, morals, and general well being of the people. . . . The constitutional question, on principle, therefore, would seem to be, not whether a vested right is impaired . . . but whether such a change reasonably could be believed to be sufficiently necessary to the public welfare as to justify the impairment." (*Addison* v. *Addison* (1965) 62 Cal.2d 558, 566 [43 Cal.Rptr. 97, 399 P.2d 897, 14 A.L.R.3d 391]; see also *American Can Co.* v. *Oregon Liquor Control Com'n* (1973) 15 Ore.App. 618 [517 P.2d 691, 703-704], where the Oregon court, in upholding the Oregon bottle bill, noted that the "United States Supreme Court has not struck down economic legislation on the basis of substantive due process since the Depression.")

We accordingly hold that Penal Code sections 653o-653r are not violative of due process. Appellants' final argument to the effect that these measures constitute a "taking" for which compensation is required is without merit. ■ Regulations enacted in the exercise of the police power do not constitute a taking of property for public use for which compensation must be paid. Although the exercise of the police power may necessarily diminish the value or utility of private property in certain instances, the very essence of the police power (as distinguished from the power of eminent domain) is that the deprivation of individual rights and property without compensation cannot prevent its operation, so long as its exercise is proper and reasonable. (*Beverly Oil Co.* v. *City of Los Angeles* (1953) 40 Cal.2d 552, 557 [254 P.2d 865]; *Candlestick*

*Properties, Inc.* v. *San Francisco Bay Conservation etc. Com.* (1970) 11. Cal.App.3d 557, 571 [89 Cal.Rptr. 897].)

The judgment is affirmed.

Draper, P. J., and Devine, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 19, 1976.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.