TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 98-501 |
| of | : | |
| | : | July 16, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE JAN GOLDSMITH, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

May a city prohibit the making of turns onto designated public streets in either business or residential areas within its jurisdiction during selected hours when no traffic safety issue is involved?

CONCLUSION

A city may prohibit the making of turns onto designated public streets in either business or residential areas within its jurisdiction during selected hours when no traffic safety issue is involved.

ANALYSIS

A city possesses and may exercise only such powers as are granted to it by the Constitution or by state statutes, together with those powers that arise by necessary implication from those expressly granted. (*Myers* v. *City Council of Pismo Beach* (1966) 241 Cal.App.2d 237, 240; 76 Ops.Cal.Atty.Gen. 289, 291 (1993).) In *A&B Cattle Co.* v. *City of Escondido* (1987) 192 Cal.App.3d 1032, 1038, the court summarized the following principles of municipal powers that we find to be applicable to the question presented:

"'Under the police power granted by the Constitution, counties and cities have plenary authority to govern, subject only to the limitation that they exercise this power within their territorial limits and subordinate to state law.' [Citation.] More specifically, article XI, section 7 of the California Constitution provides: 'A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws.' Where local legislation conflicts with general law, it is void. [Citations.] 'Apart from this limitation, the "police power [of a county or city] under this provision . . . is as broad as the police power exercisable by the Legislature itself."' [Citations.]

police power exercisable by the Legislature itself." [Citations.]

      "A local legislative enactment will be invalidated when it duplicates, contradicts, or infringes upon an area completely occupied by general law, either expressly or by legislative implication. Moreover, where the subject matter of the local legislation has been entirely occupied by state general law, supplementary or complementary legislation, even pertaining to matters otherwise properly characterized as municipal in character, is prohibited. [Citations.]"

These legal principles have been applied in a variety of contexts. (See *Candid Enterprises, Inc*. v. *Grossmont Union High School District* (1985) 39 Cal.3d 878, 885; *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 140; 78 Ops.Cal.Atty.Gen. 171, 172 (1995); 76 Ops.Cal.Atty.Gen. 289, 291 (1993).)

      We are asked whether a city may prohibit the making of turns onto designated public streets in either business or residential areas during selected hours where no traffic safety issue is involved. **Footnote No. 1** This inquiry presents two essential issues of law. First, would the ordinance prohibiting the making of turns onto designated streets for other than traffic safety considerations be in conflict with any state law? Second, would such an ordinance fall within a city's police power?

      1.      Consistency With State Law

      Section 21 of the Vehicle Code **Footnote No. 2** provides:

      "Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the state and in all counties and municipalities therein, and no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized therein."

In section 21 the Legislature has expressed its plenary power over the regulation and control of traffic on all highways and streets in the state, including those under the jurisdiction of local authorities. (*Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545, 551; *Pipoly* v. *Benson* (1942) 20 Cal.2d 366, 371; *City of Lafayette* v. *County of Contra Costa* (1979) 91 Cal.App.3d 749, 755, 756.) In *Citizens Against Gated Enclaves* v. *Whitley Heights Civic Assn*. (1994) 23 Cal.App.4th 812, 820, the court observed:

      "As noted by the Attorney General: 'Regulating the use of the public roads and highways by whatever means is outside the "municipal affairs" constitutional grant of authority to chartered cities.' (68 Ops.Cal.Atty.Gen. 101, 102, fn. 2 (1985).) Moreover, citing section 21, *Rumford,* and *Lafayette,* among others, the Attorney General stated: 'Since the state has preempted the entire field of traffic control, any right of a local authority to interfere with the free flow of traffic . . . must be derived from an express delegation of authority from the Legislature.' . . . (75 Ops.Cal.Atty.Gen. 80, 81 (1992).) We agree."

Accordingly, a city may regulate traffic only if it is so expressly authorized. (78 Ops.Cal.Atty.Gen. 65, 67 (1995); 68 Ops.Cal.Atty.Gen. 101, 102 (1985).) We thus must determine here whether a city has "express delegation of authority from the Legislature" to regulate the making of turns onto designated public streets during selected hours for purposes other than traffic safety.

      Section 22101, subdivision (a) provides:

      "The Department of Transportation or local authorities in respect to highways under their respective jurisdictions, may cause official traffic control devices to be placed or erected within or adjacent to intersections to regulate or prohibit turning movements at such intersections."

The Vehicle Code defines the terms used by the Legislature in section 22101. "'Local authorities' means the

The Vehicle Code defines the terms used by the Legislature in section 22101: "'Local authorities' means the legislative body of every county or municipality having authority to adopt local police regulations." (§ 385.) "'Highway' is a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel. Highway includes street." (§ 360.) "An 'official traffic control device' is any sign, signal, marking, or device . . . placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guiding traffic . . . ." (§ 440.)

It is readily apparent from these statutory definitions that the Legislature has expressly authorized cities to prohibit the making of turns onto designated public streets in either business or residential areas during selected hours when no traffic safety issue is involved. We find nothing in subdivision (a) of section 22101 that would limit the exercise of such authority to traffic safety concerns to the exclusion of all other considerations. (See also §§ 22113, 21351.)

2.        Scope of Municipal Police Power

As noted above, a city's constitutionally based police power is, while subordinate to general law, "as broad as the police power exercisable by the Legislature itself." (See *Birkenfeld* v. *City of Berkeley*, *supra*, 17 Cal.3d at 140.) The police power is not limited to safety concerns. (75 Ops.Cal.Atty.Gen. 239, 241 (1992).) In *People* v. *K. Sakai Co.* (1976) 56 Cal.App.3d 531, 535, the court explained:

"The police power has long been described as the inherent power of a body politic to enact and enforce laws for the promotion of the general welfare. [Citations.] It has been said that an 'attempt to define its reach or trace its outer limits is fruitless.' [Citation.] The scope of the police power changes with changing social and economic conditions. It is 'not a circumscribed prerogative, . . . but is elastic and . . . capable of expansion to meet existing conditions of modern life and thereby keep pace with the social, economic, moral, and intellectual evolution of the human race. . . .'"

In *Miller* v. *Board of Public Works* (1925) 195 Cal. 477, 485, the Supreme Court further observed:

"In its inception the police power was closely concerned with the preservation of the public peace, safety, morals, and health without specific regard for 'the general welfare.' The increasing complexity of our civilization and institutions later gave rise to cases wherein the promotion of the public welfare was held by the courts to be a legitimate object for the exercise of the police power. As our civic life has developed so has the definition of 'public welfare' until it has been held to embrace regulations 'to promote the economic welfare, public convenience and general prosperity of the community.'"

Accordingly, we have stated that "[t]he police power is the inherent authority of the state to enact and enforce laws for the promotion of the general welfare, including the economic welfare, public convenience and general prosperity of the community." (65 Ops.Cal.Atty.Gen. 267, 273 (1982).) Any such purpose, including for example the alleviation of noise or air pollution within a business area or residential community during certain periods of the day, would support the exercise by a city of its police power authority in regulating the making of turns onto designated public streets without regard to any specified traffic safety objectives.

We conclude that a city may prohibit the making of turns onto designated public streets in either business or residential areas within its jurisdiction during selected hours when no traffic safety issue is involved.

\* \* \* \* \*

Footnote No. 1

**Footnote No. 1**

The question as presented assumes that the making of a turn would be prohibited by the city for reasons other than traffic safety. It is noted, however, that even if the municipal power to regulate turns at intersections were limited to safety concerns, it may not be contended in defense to a charge of making a prohibited turn that the prohibition was motivated by other than safety concerns. Based on the separation of powers doctrine expressly stated in section 3 of article III of the Constitution, the judiciary will confine its evaluation of a statute to the terms of the legislation itself and will not inquire into the mental processes or motivations of those who enacted it. (*Board of Supervisors* v. *Superior Court* (1995) 32 Cal.App.4th 1616, 1623; see also, *City of Fairfield* v. *Superior Court* (1975) 14 Cal.3d 768, 777 [review of city council denial of application for development permit]; *State of California* v. *Superior Court* (1974) 12 Cal.3d 237, 257-258 [review of quasi-judicial determination].) Accordingly, unless the court finds that the regulation *on its face* is irrationally conceived for such purpose (*Eye Dog Foundation* v. *State Board, etc.* (1967) 67 Cal.2d 536, 547) or patently unreasonable (70 Ops.Cal.Atty.Gen. 292, 295 (1987)) or oppressive (66 Ops.Cal.Atty.Gen. 367, 368 (1983)) so as to violate the constitutional guarantee of substantive due process (cf. 69 Ops.Cal.Atty.Gen. 191, 197 (1986); 62 Ops.Cal.Atty.Gen. 351, 352 (1979)), the validity of the statute will be sustained.

**Footnote No. 2**

All references herein to the Vehicle Code are by section number only.